**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eldon M. Schurz,<br><br>    Petitioner,<br><br>vs.<br><br>Dora Schriro, et al.,<br><br>    Respondents. | No. CV-97-580-PHX-EHC<br><br>DEATH PENALTY CASE<br><br>**ORDER RE: RENEWED MOTION FOR EVIDENTIARY HEARING** |

    Eldon M. Schurz ("Petitioner") is a state prisoner under sentence of death. Pending before the Court is Petitioner's renewed motion for evidentiary hearing. (Dkt. 109.)[1] Petitioner seeks an evidentiary hearing with regard to Claims 4, 5, 7, 9 and 10. Respondents filed an opposition to the motion, and Petitioner filed a reply. (Dkts. 114, 115.)

**LEGAL STANDARD FOR EVIDENTIARY HEARING**

    The decision whether to grant an evidentiary hearing when there are material facts in dispute is generally at the discretion of the district court judge. See Townsend v. Sain, 372 U.S. 293, 312, 318 (1963), overruled in part by Keeney v. Tamayo-Reyes, 504 U.S. 1

---

[1] "Dkt." refers to documents in this Court's case file. The Court denied Petitioner's initial motion for evidentiary hearing, without prejudice to refiling, because the motion lacked the specificity and evidentiary support necessary to properly determine whether Petitioner had been diligent in state court in developing the factual basis of the claims for which he sought a federal evidentiary hearing, as required by 28 U.S.C. § 2254(e)(2). (Dkt. 82.)

(1992), and limited by § 2254(e)(2); Baja v. Ducharme, 187 F.3d 1075, 1077 (9th Cir. 1999); Rule 8, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (providing that the district court judge shall determine if an evidentiary hearing is required). However, a judge's discretion is significantly circumscribed by § 2254(e)(2) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Williams v. Taylor, 529 U.S. 420 (2000).

Section 2254 provides that:

> *If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –*
>
> (A) the claim relies on –
>
>     (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
>     (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added).

As interpreted by the Supreme Court, subsection (e)(2) precludes an evidentiary hearing in federal court only if the failure to develop a claim's factual basis is due to a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Williams, 529 U.S. at 432. "The purpose of the fault component of 'failed' is to ensure the prisoner undertakes his own diligent search for evidence." Id. at 435. The Court found that this rule served AEDPA's goal of furthering comity in that "federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." Id.; see also Cardwell v. Netherland, 971 F. Supp. 997, 1008 (E.D. Va. 1997) ("Ordinarily, a § 2254 petition is limited to the factual record developed in state court proceedings"), aff'd Cardwell v. Greene, 152 F.3d 331 (4th Cir. 1998), overruled on other grounds, Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000). In correlation, subsection (e)(2) allows factual development when a petitioner diligently

attempts to develop the factual basis of a claim in state court and is "thwarted, for example, by the conduct of another or by happenstance was denied the opportunity to do so." Williams, 529 U.S. at 432; see Baja, 187 F.3d at 1078-79.

In compliance with § 2254(e)(2), when the factual basis for a particular claim has not been fully developed in state court, the first question for a district court in evaluating whether to grant an evidentiary hearing on the claim is whether the petitioner was diligent in attempting to develop its factual basis. See Baja, 187 F.3d at 1078 (quoting Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir. 1998), overruled on other grounds, Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)). The Supreme Court set an objective standard for determining "diligence," such that the requirement is dependent upon whether a petitioner "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." Williams, 529 U.S. at 435. For example, when there is information in the record that would alert a reasonable attorney to the existence and importance of certain evidence, the attorney "fails" to develop the factual record if he does not make reasonable efforts to sufficiently investigate and present the evidence to the state court. See id. at 438-40 (counsel lacked diligence because he was on notice of possibly material evidence and conducted only a cursory investigation); Alley v. Bell, 307 F.3d 380, 390-91 (6th Cir. 2002) (lack of diligence because petitioner knew of and raised claims of judicial bias and jury irregularities in state court, but failed to investigate all the factual grounds for such claims).

Absent unusual circumstances, diligence requires "that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." Williams, 529 U.S. at 437; see Bragg v. Galaza, 242 F.3d 1082, 1090 (9th Cir. 2001), amended on denial of reh'g, 253 F.3d 1150 (9th Cir. 2001) ("inactions show insufficient diligence" on ineffective counsel claim because petitioner did not request an evidentiary hearing, and brought claim only on appeal not in a collateral proceeding). However, the mere request for an evidentiary hearing may not be sufficient to establish diligence if a reasonable person

would have taken additional steps. See Dowthitt v. Johnson, 230 F.3d 733, 758 (5th Cir. 2000) (petitioner requested hearing but found not diligent because he failed to present affidavits of family members that were easily obtained without court order and with minimal expense); see also Koste v. Dormire, 345 F.3d 974, 985-86 (8th Cir. 2003) (lack of diligence despite hearing request because petitioner made no effort to develop the record or assert any facts to support claim that his counsel was ineffective for knowing of and failing to investigate his psychiatric condition), cert. denied, 124 S. Ct. 2070 (2004). If an evidentiary hearing is requested, a petitioner's inability to persuade a state court to conduct such a hearing does not in itself demonstrate lack of diligence. See Cardwell, 152 F.3d at 338.

In sum, if this Court determines that a petitioner has not been diligent in establishing the factual basis for his claims in state court, then the Court may not conduct a hearing unless the petitioner satisfies one of § 2254(e)(2)'s narrow exceptions. If, however, the petitioner has not failed to develop the factual basis of his claim in state court, the Court will then proceed to consider whether a hearing is appropriate or required under the criteria set forth by the Supreme Court in Townsend. 372 U.S. 293; see Baja, 187 F.3d at 1078 (quoting Cardwell, 152 F.3d at 337).

Pursuant to Townsend, a federal district court *must* hold an evidentiary hearing in a § 2254 case when the facts are in dispute if: (1) the petitioner "alleges facts which, if proved, would entitle him to relief," and (2) the state court has not, "after a full hearing reliably found the relevant facts." Townsend, 372 U.S. at 312-13. In addition, the Court established six circumstances under which there is presumptively no "full and fair hearing" at the state level:

(1) the merits of the factual dispute were not resolved in the state hearing;

(2) the state factual determination is not fairly supported by the record as a whole;

(3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing;

(4) there is a substantial allegation of newly discovered evidence;

(5) the material facts were not adequately developed at the state-court hearing; or

(6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

See id. at 313. In any other case in which the facts are in dispute and diligence has been established, the district court judge "has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim." Id. at 318 (noting that if a "habeas applicant was afforded a full and fair hearing by the state court resulting in reliable findings, [the judge] may, and ordinarily should, accept the facts as found in the hearing").

## DISCUSSION

**Claim 4**      **The Trial Court's Failure to Appoint an Expert to Examine Petitioner and Assist in his Defense Violated Petitioner's Due Process Right to Meaningful Psychiatric Assistance Under Ake v. Oklahoma.**

**Claim 5**      **The Trial Court's Failure to Find Petitioner's Intoxication as a Statutory Mitigating Circumstance and the Trial Court's Failure to Consider Petitioner's Intoxication as a Non-Statutory Mitigating Circumstance Violated the Eighth Amendment.**

**Claim 7**      **As Applied to the Facts of this Case, the Death Penalty is Cruel and Unusual Punishment in Violation of the Eighth Amendment.**

Petitioner raised the substance of Claims 4, 5 and 7 on direct appeal. (Dkt. 29 at 27-28, 35.) Regarding Claim 4, Petitioner seeks an evidentiary hearing to present the testimony of his school teachers, family members and friends, all of whom will testify concerning the circumstances that led to his mental health disorders. (Dkt. 109 at 16.) Regarding Claims 4 and 5, Petitioner seeks to present expert testimony from a mitigation specialist, psychologist, psychiatrist, addiction specialist and cultural expert regarding his possible organic brain disorder, brain damage, intellectual deficit and fetal alcohol syndrome. (Id. at 16-18.) Regarding Claim 7, Petitioner wishes to present all of the above mitigation to show that his death sentence constitutes cruel and unusual punishment. (Id. at 23-24.)

However, none of this material is relevant because all three claims are based on the record that was developed during trial and sentencing. This Court's review of the trial

court's denial of an expert and its consideration of mitigation evidence is necessarily limited to the factual record developed in state court.[2] Similarly, this Court's review of the constitutionality of Arizona's death penalty statute as applied in Petitioner's case is necessarily limited to the record developed at sentencing. "[A]n evidentiary hearing is *not* required on issues that can be resolved by reference to the state court record." Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998) (emphasis in original). Therefore, the requests for an evidentiary hearing on Claims 4, 5 and 7 will be denied.[3]

**Claim 9** **Petitioner was Denied Effective Assistance of Counsel at Trial by Counsel's: (A) Lack of Preparation and Failure to Obtain Continuance; (B) Ineffective Advice to Petitioner not to Testify; (C) Ineffective Cross-Examination of a Witness; (D) Failure to Pursue a Mental Condition Defense; and (E) Ineffective Investigation.**

In his motion for an evidentiary hearing, Petitioner contends that he was diligent in his attempt to develop the facts of Claim 9 in state court and is therefore entitled to an evidentiary hearing. (Dkt. 109 at 23.) Petitioner contends that he alleged colorable claims of ineffective assistance of counsel ("IAC") at trial, which the state court should not have summarily dismissed without holding an evidentiary hearing. (Id. at 3.) At an evidentiary hearing in this Court, Petitioner seeks to present the testimony of trial counsel regarding his trial errors and an IAC expert regarding the standards of professional competence that existed at the time of his trial. (Id.)

---

[2] When considering the merits of Claim 4, if the Court were to find a constitutional violation pursuant to Ake and a harmlessness analysis became necessary, at that time the Court would *sua sponte* consider whether an evidentiary hearing was required. See Rule 8, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring court to evaluate whether an evidentiary hearing is warranted).

[3] In this Court's Order Re: Procedural Status of Claims, the Court left undecided the status of the "failure to consider" aspect of Claim 5 and directed the parties to provide supplemental briefing of the issue in the Merits Briefs. (See Dkt. 29 at 28-33.) Because Claim 5 is a record-based claim for which an evidentiary hearing is not required, the Court need not resolve the procedural status of the "failure to consider" aspect at this time.

On August 8, 1991, while his direct appeal to the Arizona Supreme Court was pending, Petitioner (represented by counsel) filed his first petition for post-conviction relief ("PCR"), which included Claim 9. (ROA doc. 154.)[4] In support of the trial IAC claims, the petition included an affidavit from Petitioner stating his personal opinion that counsel did not effectively investigate his case, cross-examine a witness or advise him regarding testifying. (Id.) In a supplemental PCR petition, counsel added legal argument and requested an evidentiary hearing. (ROA doc. 161 at 10.) PCR counsel did not request any type of investigative assistance or any expert funding to develop the factual basis of the IAC claims. In a comprehensive seven-page order, the state court concluded that Petitioner had failed to state a colorable claim of trial IAC and was not entitled to an evidentiary hearing. (ROA doc. 165.) A petition for review of the state court's order dismissing Petitioner's first PCR petition was consolidated with his direct appeal. On April 15, 1993, the Arizona Supreme Court affirmed Petitioner's convictions and sentences and denied post-conviction relief. State v. Schurz, 176 Ariz. 46, 50, cert. denied, 510 U.S. 1026 (1993).

In light of this record, the Court finds that PCR counsel's efforts to develop Claim 9 fall short of that necessary to demonstrate diligence under 28 U.S.C. § 2254(e)(2). Petitioner must have "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." Williams, 529 U.S. at 435. In light of the allegations presented in the PCR, Petitioner was aware of the materiality of information from trial counsel yet did nothing to obtain an affidavit from counsel to support his claims. See Williams, 529 U.S. at 438-40 (stating that when there is information in the record that would alert a reasonable attorney to the existence and importance of certain evidence, the attorney "fails" to develop the factual record if he does not make reasonable efforts to

---

[4] "ROA doc." refers to documents in the five-volume record on appeal from trial, sentencing, and the first and second petitions for post-conviction relief. Copies of the record on appeal, as well as the trial transcripts and the pleadings filed in the Arizona Supreme Court, were provided to this Court by counsel for Respondents. (Dkt. 25.)

1 investigate and present the evidence to the state courts).  PCR counsel did not request an
2 investigator to assist in gathering evidence to support the claim, nor does it appear that
3 counsel made any effort to interview trial counsel.  Petitioner does not allege that trial
4 counsel was unavailable or unwilling to cooperate, nor does the record reflect any request
5 of the PCR court (other than a generic request for an evidentiary hearing) to assist in
6 developing evidence from trial counsel.  It appears that nothing prevented Petitioner from
7 obtaining the relevant information from trial counsel to support his IAC claims; therefore,
8 it was unreasonable not to do so.  Similarly, nothing prevented Petitioner from requesting
9 expert funding in order to present facts in support of Claim 9.  See Baja, 187 F.3d at 1079
10 (stating that "[s]tate law not only permitted but required [petitioner] to come forward with
11 affidavits or other evidence, to the extent that his claim relied on evidence outside the trial
12 record.").  Although Petitioner argues the state court curtailed his ability to present
13 evidence in support of Claim 9, the record does not demonstrate any type of curtailment
14 that prevented Petitioner from developing the factual basis of Claim 9. (Dkt. 109.)  Because
15 Petitioner was not diligent in developing the factual basis of Claim 9 in state court, §
16 2254(e)(2) prohibits the holding of a federal evidentiary hearing and the motion will be
17 denied.

**Claim 10** **Petitioner was Denied Effective Assistance of Counsel at Sentencing by Counsel's: (A) Inadequate Mitigation Investigation; and (B) Failure to Adequately Present Available Mitigation Evidence**.

20 Petitioner attached twelve exhibits to his initial motion for an evidentiary hearing
21 that were not part of the state court record.  (See dkt. 82.)  Petitioner requested that those
22 exhibits be considered as part of Claim 10.  This Court denied the motion without prejudice
23 to refiling, ruling that, to satisfy 28 U.S.C. § 2254(e)(2), he must explain why evidence such
24 as 20-year-old medical records and psychological evaluations was not obtained and
25 presented in collateral state court proceedings.  (Dkt. 82 at 12.)
26 In his renewed motion for an evidentiary hearing, Petitioner contends that he was
27 diligent in his attempt to develop the facts of Claim 10 in state court and is therefore

entitled to a federal evidentiary hearing. (Dkt. 109 at 23.) Petitioner seeks a hearing to present the testimony of Arlene Schurz, his mother; Sharon Apkaw, his aunt; Joycelyn Martinez, his cousin; Sister Martha Mary Carpenter, one of his elementary school teachers; and Michael Dodd and David Hedgecock, employees of New Foundation, a substance abuse treatment center that Petitioner attended between 1977 and 1979. (Dkt. 109 at 21-23.) Additionally, Petitioner seeks to present testimony from a mitigation specialist, a psychologist, a psychiatrist, an addiction specialist and a cultural expert. (Dkt. 109 at 23.)

<u>State Court Proceedings</u>

After Petitioner's June 11, 1990 conviction, counsel sought and was granted the appointment of an mental health expert, Dr. Donald Tatro, for purposes of sentencing. (ROA doc. 116.) On September 17, 1990, counsel submitted a 33-page memorandum outlining relevant mitigating factors. (ROA doc. 134.) Attached to the memorandum were a 15-page psychological report from Dr. Tatro; letters from Petitioner's mother and aunt; copies of Petitioner's grade school records, GED certificate and certificate of completion from a substance abuse program; letters from family friend, Cecil Rovie, and Sister Martha Mary Carpenter.

In counsel's presentation of relevant mitigation (ROA doc. 134), he first discussed residual doubt about Petitioner's level of participation in the crime. Next, counsel focused on Petitioner's intoxication at the time of the crime, arguing that such intoxication rose to a statutory mitigating circumstance. Petitioner's alleged intoxication included significant ingestion of alcohol prior to the crime and an amount of heroin. Counsel argued that Petitioner not only was intoxicated at the time of the crime but also had a long-term substance abuse problem with alcoholism. Next, counsel emphasized the dramatic disparity between co-defendant's sentence of only probation and Petitioner being eligible for the death penalty. Next, counsel discussed Petitioner's dysfunctional family history. Counsel emphasized that Petitioner grew up in an environment of alcoholism. Counsel discussed that Petitioner was surrounded by alcoholic and abusive parents and by other

alcoholics visiting their home. After the father left, Petitioner's mother displayed little attention for him, as she tried to support 5 children. At a young age, Petitioner's mother consigned him to an institution. Counsel argued that the long-term institutionalization of Petitioner had an adverse effect upon him and that as a result of his dysfunctional family history, he developed significant and severe psychological problems. Next, counsel discussed Petitioner's potential for rehabilitation and the love of his family and friends. In support, counsel attached letters from his mother, his aunt, another family friend and an elementary school teacher, who all care for Petitioner. Finally, counsel reiterated the early offer of a plea-bargain in this case for a life sentence.

Dr. Tatro's report substantiated Petitioner's mental health problems, concluding that he had a mixed personality disorder with passive-aggressive, avoidant and antisocial features. (ROA doc. 134, Ex. A at 15.) Dr. Tatro discussed Petitioner's long-term substance abuse problem, concluding that Petitioner had a heroin (opiate) dependance and alcoholism. Dr. Tatro also recounted Petitioner's dysfunctional family history growing up on the Pima Indian Reservation in an environment of alcoholic and abusive parents. Petitioner started drinking alcohol and abusing drugs at an early age after his grandmother died. Such drug abuse included IV use of heroin. Dr. Tatro detailed Petitioner's contacts with institutions, with Petitioner first being institutionalized at the age of 12 for substance abuse. Petitioner's contact with institutions included substance abuse treatment centers, juvenile institutions, and after turning 18, prison. Dr. Tatro concluded that such long-term institutionalization had an adverse effect upon Petitioner.

At the presentence hearing, both Sister Martha Mary Carpenter and Petitioner's aunt, Sharon Apkaw, testified as character witnesses for Petitioner. (RT 9/19/90.) Following their presentation, Petitioner issued a short allocution, declaring his innocence. (Id.) Additionally, the sentencing court was aware of a March 1990 report from Dr. Jack Potts, who performed a pre-screening evaluation pursuant to Ariz. R. Crim. P. 11 in order to determine Petitioner's competency to stand trial. (ROA doc. 44.) Dr. Potts determined

that Petitioner was competent to stand trial. (Id.) In statements to Dr. Potts, Petitioner self-reported using intravenous heroin and drinking alcohol at the time of the crime and relayed that a prior head injury still bothered him. (Id.) See also Schurz, 176 Ariz. at 53, 859 P.2d at 163.

In both his first and second PCR petitions, Petitioner raised claims of IAC at sentencing. In the first petition, he argued that counsel was ineffective for not calling additional character witnesses to testify at the presentence hearing. (ROA doc. 154 at 4.) This claim was denied on the ground that Petitioner failed to state a colorable claim that would justify an evidentiary hearing because Petitioner's affidavit failed to state what the witnesses would have said at the presentence hearing. (ROA doc. 165.) The PCR court concluded it was impossible to determine whether the substance of the proposed testimony had in fact been presented at sentencing or whether the absence of the testimony created a reasonable probability that Petitioner would not have been sentenced to death had the testimony been presented. (Id. at 9-10.)

Counsel was appointed to assist Petitioner in his second PCR proceeding on January 14, 1994, and was given until May 14, 1994, to file a petition. (ROA doc. 176.) On April 11, 1994, Petitioner filed a motion for the appointment of an investigator on the ground that "certain aspects of the case" required investigation that "[c]ounsel is not qualified to perform." (ROA doc. 177.) On April 21, 1994, the trial judge denied Petitioner's request for an investigator without prejudice because it was "silent as to why an investigator should be appointed." (ROA doc. 178.) The court's order stated that the request would be reconsidered if Petitioner provided "additional information concerning why an investigator should be appointed and/or what matters need to be investigated." (Id.)

On May 12, 1994, Petitioner requested a 30-day extension of time to file his PCR petition. (ROA doc. 179.) Before the motion was ruled on, Petitioner filed a separate request to file his petition "60 days from the date of the appointment of the investigator or

1 the denial of the renewed request for the appointment of an investigator." (ROA doc. 179A.) This extension was sought because counsel was preparing a new motion for investigative assistance in an attempt to "satisfy the court's concerns about the necessity of the appointment of an investigator." (ROA doc. 179A.) The court granted Petitioner's request for a 60-day extension, and ordered that the petition be filed by July 15, 1994. (ROA doc. 180.)

On June 15, 1994, the Office of Court Appointed Counsel approved the funding of a mitigation specialist, Mary Durand, to assist Petitioner's counsel with "mitigation issues" in connection with the second petition. (ROA doc. 189 at ¶ 1; ROA doc. 182.) On July 13, 1994, Petitioner filed a second request for a 60-day extension of time to file his petition on the grounds that "[t]he Office of Court Appointed Counsel has approved the funding of a mitigation specialist to assist the defense," who "has just begun her work on the case." (ROA doc. 182.) The court granted Petitioner's request and ordered that the petition be filed by September 15, 1994. (ROA doc. 183.)

On September 16, 1994, Petitioner filed a third request for a 60-day extension of time to file his petition on the grounds that the mitigation specialist needs "more time to complete" the investigation. (ROA doc. 184.) Counsel informed the court that the mitigation specialist was now reporting progress in locating members of Petitioner's family. (Id.) The motion further provided that, "[b]arring unforeseeable circumstances," no further extensions were anticipated. (Id.) The court granted Petitioner's request and ordered that the petition be filed by November 15, 1994. (ROA doc. 185.)

On November 9, 1994, Petitioner filed a request for a six-month extension of time on the grounds that "more time is needed for the . . . 'mitigation specialist,' to complete an in-depth mitigation investigation that 'will yield significantly new material' which will be relevant to the Rule 32 Petition."[5] (ROA doc. 187.) The State opposed Petitioner's request

---

[5] Petitioner's fourth request for an extension of time is not contained in the record on appeal provided to this Court. However, Petitioner's reply brief, filed with

- 12 -

for more time on the ground that Durand's affidavit failed to "detail what she had done since her appointment or what leads she plans to investigate that will lead to relevant mitigation." (ROA doc. 187.) The State argued that it "would not object to a reasonable [investigation] schedule" if Durand were pursuing "the investigation of relevant mitigation that was unknown to the defendant and his counsel at time of sentencing," rather than "a general exploratory search for information that should have occurred prior to sentencing." (ROA doc. 187.) "Until an investigative plan" was presented, however, the State objected to a six-month extension. (ROA doc. 187.) On November 28, the court granted Petitioner a 60-day extension and ordered that the second PCR petition be filed on or before January 23, 1995. (ROA doc. 188.)

On January 23, 1995, counsel filed the second PCR petition and argued IAC at sentencing because "the original investigation and the presentation of mitigating evidence in this case was woefully inadequate." (ROA doc. 189 at 3.) Specifically, Petitioner alleged that the following areas of mitigation should have been presented: fetal alcohol syndrome, evidence of organicity in physiological make-up, alcoholism in family, physical abuse, possible sexual abuse by a priest, serious head injury at age 10, chronic alcohol and substance abuse (including heroin and IV use), treatment at Camelback Hospital, institutionalization, drug rehabilitation, and dysfunctional family background. (Id. at 11-13.) Attached to the second petition was an affidavit of Durand, who averred that she had "read the petition for Post Conviction relief and the factual statements alleged therein can all be supported by my investigation." (ROA doc. 189, Durand Aff. at ¶ 6.)

On March 6, 1995, Petitioner filed motions requesting that the Arizona Department of Corrections ("ADOC") provide his investigator with copies of his master, juvenile and medical files. (ROA doc. 190-92.) On March 10, 1995, the State asked the court to stay Petitioner's document requests until March 17, 1995, in order to allow the ADOC adequate

---

respect to his initial motion for an evidentiary hearing, states that this extension request was filed on November 9, 1994. (Dkt. 80 at 28.)

- 13 -

time to review the files "and determine whether any protective orders will be required" pursuant to A.R.S. § 31-221. (ROA doc. 194.)[6] The State questioned the "materiality" of the records as to Petitioner's second petition, but did not object to defense counsel's review of them if it was pursuant to court order and in accordance with Arizona law. (ROA doc. 194 at 2.)

On March 22, 1995, the State agreed that, "[p]ursuant to a court order and upon payment of statutory fees," the ADOC would release copies of Petitioner's master and juvenile files to his attorney and investigator, "after redacting information about a confidential informant." (ROA doc. 195.) The State offered to release Petitioner's medical file after receiving copying costs and a signed, notarized release. (ROA doc. 195 at 1-2.)

On March 24, 1995, the trial judge ordered the ADOC to provide copies of Petitioner's master and juvenile files to his attorney or investigator. (ROA doc. 197, 198.) Pursuant to A.R.S. §§ 31-221(C) and (D), the court prohibited Petitioner's attorney and investigator from (i) giving any person access to their copy of the master file; (ii) disclosing the contents of the master file to Petitioner; and (iii) disclosing to any person any information from the master file that would (a) "reveal the identity of a confidential informant;" (b) "endanger the life or physical safety of a person;" or (c) "jeopardize an ongoing criminal investigation." (ROA doc. 197.)

On July 31, 1995, the trial judge issued an eight-page order denying Petitioner's second PCR petition on the ground that the court had "been unable to find anything which would justify an evidentiary hearing in this case on the issue of [IAC] or any other issue raised." (ROA doc. 200 at 71.) With respect to the IAC at sentencing claim, the court ruled that Petitioner had failed to demonstrate "anything which . . . trial counsel should have

---

[6] Arizona Revised Statute Section 31-221 provides that the ADOC "shall not disclose records or portions of records" from a master file revealing the identity of a confidential informant, information that would endanger the life or physical safety of a person, or information that would jeopardize an ongoing criminal investigation.

1 discovered but did not discover because of some sort of deficient conduct." (ROA doc.
2 200 at 68.) A petition for review to the Arizona Supreme Court was summarily denied.

3 Analysis

4 Respondents contend that 28 U.S.C. § 2254(e)(2) bars an evidentiary hearing
5 because Petitioner was not diligent in state court in developing the facts he now seeks to
6 present in this Court (Dkt. 114 at 10).  See Wildman v. Johnson, 261 F.3d 832, 839-40 (9th
7 Cir. 2001). Petitioner counters that he tried to develop the record in state court during PCR
8 proceedings but was unable to do so because: (1) the state court denied his request for
9 investigative assistance in April 1994; (2) the state court did not grant his full request for
10 a six-month extension of time to file his second PCR petition in November 1994, and the
11 shortened time limit for the filing of the petition did not allow his mitigation specialist
12 enough time to complete her investigation; (3) the state court restricted access to his
13 ADOC medical and juvenile files in March 1995; and (4) the state court failed to hold an
14 evidentiary hearing. (Dkts. 109 at 6-12; 115 at 6-10.) The Court disagrees.

15 First, even though the state court initially denied funding for an investigator due to
16 Petitioner's failure to provide factual support for the request, the denial was without
17 prejudice. Petitioner subsequently renewed the request, specifically asking for a mitigation
18 specialist to assist the investigation and development of his IAC at sentencing claim, and
19 the court granted the motion. (ROA docs. 178-80, 182.) Following this appointment, the
20 court allowed more than seven months for the mitigation specialist to investigate and
21 collect evidence. (ROA doc. 189.)

22 Second, although the PCR court did not expressly grant the full six month
23 continuance requested by counsel in November 1994, the court provided more than one
24 year for Petitioner to file his second PCR petition. In addition, there is no explanation as
25 to why the materials presumably gathered by the mitigation investigator during the seven
26 months between her appointment and the filing of the petition could not have been
27 provided to the court at the time the second PCR petition was filed. The only material
28

attached to the second PCR petition was an affidavit from the mitigation specialist stating simply that her investigation supported the petition's allegations. (ROA 189, Durand Aff. at ¶ 6.) It is evident from the affidavit, however, that at least some materials had been gathered in support of Petitioner's claim. (Id.) Petitioner's failure to provide these materials to the PCR court violated the requirement that "[a]ffidavits, records, or other evidence currently available to the defendant supporting the allegations of the petition shall be attached to it." Ariz. R. Crim. P. 32.5.

Third, despite Petitioner's claim of curtailment by the ADOC, that agency did in fact provide the documents Petitioner sought. Even though there was a period of delay, such delay was reasonable as the ADOC was under a statutory obligation to safeguard confidential informants listed in its records. See A.R.S. § 32-221. After those legitimate concerns were resolved, the ADOC turned over Petitioner's records. (ROA doc. 194-95, 197.) After receipt of these documents, however, Petitioner did not seek to supplement his previously-filed PCR petition with any relevant records.

Finally, the state court's failure to hold an evidentiary hearing is due to Petitioner's own failure to develop the factual record. Even though Petitioner asserted new potential areas of mitigation in his second PCR petition, he did not provide support for these allegations despite the assistance of a mitigation specialist. For example, PCR counsel was aware, from the sentencing record, of some of the same familial and background witnesses Petitioner now seeks testimony from in this Court. If there was additional relevant information regarding Petitioner's upbringing and background from these witnesses that should have been presented at sentencing, PCR counsel could have obtained and presented this information in the second PCR petition. See Williams, 529 U.S. at 438-40 (stating that when there is information in the record that would alert a reasonable attorney to the existence and importance of certain evidence, the attorney "fails" to develop the factual record if he does not make reasonable efforts to investigate and present the evidence to the state courts); see also Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th

Cir. 2005) (in the context of a Rule 7 expansion of the record request, concluding that there was a lack of diligence because information was readily available but petitioner failed to present it in post-conviction proceedings).

In addition, Petitioner did not seek, during his second PCR proceeding, any expert assistance to investigate fetal alcohol syndrome, organicity or past head injuries. See Roberts v. Dretke, 381 F.3d 491, 500 (5th Cir. 2004) (reasoning that there is no curtailment of state habeas proceedings unless the state court denies an evidentiary hearing *and* denies funding which prevents petitioner from developing his claims) (emphasis added). A reasonable attorney, after reviewing Dr. Potts's report concerning Petitioner's head injury at age 10 and discussing the possibility of fetal alcohol syndrome and organicity with a mitigation specialist, would have sought additional assistance from the PCR court to develop these facts. Indeed, Petitioner asserts in the instant motion that a federal evidentiary hearing is necessary to present testimony from a psychologist, a psychiatrist, an addiction specialist, and a cultural expert to support his IAC at sentencing claim, yet did not request the assistance of such experts during the state PCR proceedings, despite having more than one year to develop and present such evidence. See McNair v. Campbell, 416 F.3d 1291, 1299 (11th Cir. 2005) (concluding that petitioner's failure to timely request expert funding in state PCR proceedings demonstrated a lack of diligence); Koste, 345 F.3d at 985-86 (concluding that PCR counsel was not diligent because he did not develop assertion during PCR proceedings that petitioner had a personality disorder).

The mere request for an evidentiary hearing in state court may not be sufficient to establish diligence if a reasonable person would have taken additional steps. See Dowthitt, 230 F.3d at 758. Here, a reasonable attorney would have sought expert assistance from the state court to develop evidence concerning fetal alcohol syndrome, organicity and brain injuries. In addition, a reasonable attorney would have proffered available relevant background materials, gathered by a mitigation specialist during post-conviction proceedings, to bolster the claim that counsel provided ineffective assistance at

sentencing. See Baja, 187 F.3d at 1079 (concluding there was a lack of diligence because petitioner failed in post-conviction proceeding to advance evidence in support of his federal claim and that nothing had curtailed him from properly supporting his claim). The PCR court's failure to hold an evidentiary hearing based on unsupported allegations did not curtail Petitioner's ability to develop these facts in state court. The Court finds that Petitioner did not diligently seek to develop the factual basis of Claim 10 in state court.

Finally, Petitioner contends that even if he did fail to diligently develop the factual basis of Claim 10 in state court, he is still entitled to an evidentiary hearing because he meets the exception framework established by 28 U.S.C. § 2254(e)(2)(A) and (B). (Dkt. 80 at 31-33.) Under this statutory exception framework, in order to be entitled to an evidentiary hearing, Petitioner must establish both prong (A) and (B), as follows:

(A) the claim relies on –

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A), (B). Citing Sawyer v. Whitley, 505 U.S. 333 (1992), Petitioner argues that he is entitled to present additional mitigation evidence that he is innocent of the death penalty and that prong (B) is satisfied by proving his innocence of the death penalty, without having also to prove that he is innocent of the underlying offense. (Dkt. 80 at 31-33.)

Contrary to Petitioner's argument, the Court in Sawyer only determined whether a fundamental miscarriage of justice allowed a petitioner to overcome a procedurally defaulted claim based on actual innocence. To meet the fundamental miscarriage of justice standard, a petitioner must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the existence of an aggravating

1 circumstance or some other condition of eligibility for the death sentence under the
2 applicable state law. Id. at 336, 345. The Sawyer Court went on to conclude that claims
3 regarding errors in the submission of mitigation evidence do not relate to a "condition of
4 eligibility" and cannot form a basis for relief under this exception. Id. at 345-47. Thus,
5 Sawyer does not provide support for Petitioner's argument that he is entitled to present
6 additional mitigation evidence.

7 Further, the "due diligence" provision of (e)(2)(A)(ii) does not support Petitioner's
8 argument. The "due diligence" provision of (e)(2)(A)(ii) applies to situations in which
9 "efforts to discover the facts would have been in vain," and provides an opportunity for
10 a petitioner to obtain a hearing if the factual basis of the claim "did not exist at the time of
11 state-court proceedings." Williams, 529 U.S. at 435-36. Petitioner does not suggest that
12 any of the facts necessary to this claim were not discoverable. Thus, absent Petitioner
13 being able to satisfy prong (A), Petitioner's actual innocence claim fails. Accordingly, his
14 motion for an evidentiary hearing on Claim 10 will be denied.

15 Based on the foregoing,

16 **IT IS HEREBY ORDERED** that Petitioner's Renewed Motion for Evidentiary
17 Hearing (Dkt. 109) is **DENIED**.

18 **IT IS FURTHER ORDERED** that the Clerk of Court forward a copy of this Order to
19 all counsel of record and to the Clerk of the Arizona Supreme Court, 1501 W. Washington,
20 Phoenix, AZ 85007-3329.

21 DATED this 29th day of September, 2005.

_____
Earl H. Carroll
United States District Judge