1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                    **FOR THE DISTRICT OF ARIZONA**

8

9    Eldon M. Schurz,                    )    No. CV-97-580-PHX-EHC
                                         )
10                Petitioner,            )    <u>DEATH PENALTY CASE</u>
                                         )
11   vs.                                 )
                                         )
12                                       )    **ORDER RE: RENEWED MOTION TO**
                                         )    **FILE AMENDED PETITION**
13   Dora Schriro, et al.,               )
                                         )
                 Respondents.            )
14                                       )
                                         )
15   _____    )

16        Pending before the Court is Petitioner's renewed motion for leave to file amended

17   petition, including recently exhausted federal constitutional claims.   (Dkt. 120.)[1]

18   Respondents filed an opposition to the motion, and Petitioner filed a reply.   (Dkts. 123,

19   127.)

20                **I. FACTUAL AND PROCEDURAL BACKGROUND**

21        Petitioner filed an initial petition (dkt. 1) and subsequently filed a First Amended

22   Petition ("Amended Petition") (dkt. 14), raising 14 claims.   After review of the Amended

23   Petition, this Court entered its Order concluding that certain claims were procedurally

24   barred and that the remainder of the claims were exhausted and would be reviewed on the

25   merits. (Dkt. 29.)

26        Subsequently, the Court stayed Petitioner's sentencing-related claims to allow him

27   _____

28        [1]        "Dkt." refers to the documents in this Court's case file.

1    to seek post-conviction relief ("PCR") in state court based on <u>Ring v. Arizona</u>, 536 U.S. 584

2    (2002) (concluding that a jury, not a judge, must be the finder of fact regarding the

3    existence of aggravating circumstances that render a defendant death-eligible at

4    sentencing). (Dkt. 86.) Petitioner returned to state court and initiated successive PCR

5    proceedings to determine whether <u>Ring</u> applied retroactively. However, Petitioner did not

6    limit his PCR petition to the filing of a claim based on <u>Ring</u>, but also presented all of the

7    claims this Court had earlier found procedurally barred as well as 13 additional claims never

8    before raised in collateral proceedings. The state court denied the PCR petition. Petitioner

9    sought review in the Arizona Supreme Court, which was denied. Following the conclusion

10   of PCR proceedings, this Court lifted its stay regarding Petitioner's sentencing claims. (Dkt.

11   102.) Petitioner filed an initial motion to amend, which was denied, without prejudice, on

12   procedural grounds. (Dkts. 104, 117.) Subsequently, Petitioner filed the instant motion,

13   renewing his request for leave to amend his habeas petition. (Dkt. 120.) Concurrently with

14   his motion, Petitioner lodged a proposed amended petition raising 27 claims ("Lodged

15   Petition"). (<u>Id.</u>)

## II. STANDARD FOR AMENDMENT

17       A petition for habeas corpus may be amended pursuant to the Federal Rules of Civil

18   Procedure. 28 U.S.C. § 2242; <u>see also</u> Rule 11, Rules Governing § 2254 Cases, 28 U.S.C. foll.

19   § 2254 (providing that the Federal Rules of Civil Procedure may be applied to habeas

20   petitions to the extent the rules are not inconsistent with the habeas rules). Thus, the

21   Court looks to Rule 15 of the Federal Rules of Civil Procedure to address a party's motion

22   to amend a pleading in a habeas corpus action. <u>See Calderon v. United States Dist. Ct. for</u>

23   <u>the N. Dist. of Cal.</u>, 134 F.3d 981, 986 n.6 (9th Cir. 1998) (citing <u>Withrow v. Williams</u>, 507 U.S.

24   680, 696 n.7 (1993)). Under Fed. R. Civ. P. 15(a), leave to amend "shall be freely given when

25   justice so requires," and courts must review motions to amend "in light of the strong policy

26   permitting amendment." <u>Gabrielson v. Montgomery Ward & Co.</u>, 785 F.2d 762, 765 (9th Cir.

27   1986).

28       In <u>Mayle v. Felix</u>, 125 S. Ct. 2562 (2005), the Supreme Court clarified amendment of

1   habeas petitions filed under the AEDPA,[2] and its corresponding one-year statute of
2   limitations provision, 28 U.S.C. § 2244(d)(1).  The Court construed Fed. R. Civ. P. 15(c)(2)'s
3   relation-back principle and held that amended habeas claims only relate back to "timely"
4   habeas claims when such claims are tied to a common core of operative facts.  For
5   purposes of relation back, the Court rejected the argument that a common core of operative
6   facts could be interpreted to include all facts arising out of a petitioner's trial, conviction,
7   or sentence.  Id. at 2574.

8       The factors which may justify denying a motion to amend are undue delay, bad faith
9   or dilatory motive, futility of amendment, and undue prejudice to the opposing party.
10  Foman v. Davis, 371 U.S. 178, 182 (1962).  Leave to amend may be denied based upon
11  futility alone.  See Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).  To assess futility, a
12  court necessarily evaluates whether relief may be available on the merits of proposed
13  claims.  See Caswell v. Calderon, 363 F.3d 832, 837-39 (9th Cir. 2004) (conducting a two-part
14  futility analysis reviewing both exhaustion of state court remedies and the merits of the
15  proposed claim); Stafford v. Saffle, 34 F.3d 1557, 1560 (10th Cir. 1994) (reviewing the
16  evidence presented at trial and determining it would be futile to allow the addition of a
17  sufficiency of the evidence claim).  If proposed claims are untimely, unexhausted,
18  procedurally defaulted, or if they otherwise fail as a matter of law, amendment should be
19  denied as futile.

20                              **III. DISCUSSION**

21          A. Lodged Petition--New Claims

22      Petitioner's Lodged Petition seeks to add 13 new claims not previously raised in the
23  Amended Petition.  (Dkt. 120 at Ex. 2.)  Petitioner seeks to add Claim 11 and Claims 16-27
24  to the Amended Petition.  Respondents assert that these new claims may not be added to
25  the Amended Petition based on equitable principles and time bar, as well as lack of

26  ───────────

27          [2]    All cases filed after April 24, 1996, are governed by the Antiterrorism and
    Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  See Lindh v. Murphy,
28  521 U.S. 320, 335-36 (1997).

exhaustion in state court. (Dkt. 123 at 2, 5-11.)  In reply, Petitioner cites <u>Nardi v. Stewart</u>, 354 F.3d 1134 (9th Cir. 2004), to argue that Respondents are not entitled to assert a time bar defense to amendment after they omitted to plead this defense in response to Petitioner's initial motion to amend.   Consequently, Petitioner contends that such defense is waived and may not *sua sponte* be raised by this Court. (Dkt. 127 at 3-4.)  Alternatively, Petitioner contends that even if Respondents are allowed to assert the AEDPA time bar, it is not controlling for the new claims presented in his Lodged Petition because Respondents had sufficient notice of the facts underlying these claims and thus the new claims are entitled to relate back to the Amended Petition. (<u>Id.</u> at 2.)  Finally, Petitioner contends that these new claims were exhausted by his most recent third PCR petition in state court.  (<u>Id.</u> at 4-10.)

Petitioner's Nardi argument is not applicable to Petitioner's new motion to amend. Respondents are not foreclosed *in a new response to a new motion* from asserting a time bar defense.  Based on <u>Mayle v. Felix</u>, Respondents are entitled to assert and <u>Nardi</u> does not preclude Respondents from asserting an AEDPA time bar defense to Petitioner's motion.

Accordingly, the Court must construe the effect of <u>Mayle v. Felix</u> on Petitioner's motion to amend. In <u>Mayle v. Felix</u>, the Court concluded that if claims asserted after expiration of the one-year limitation period could be revived simply because they relate to the same trial, conviction or sentence as the claims already filed, "AEDPA's limitation period would have slim significance." 125 S. Ct. at 2574.  The petitioner in <u>Mayle v. Felix</u> sought to add a new 5th Amendment involuntary admission of statements claim to his petition, which consisted only of a 6th Amendment confrontation claim.  <u>Id.</u> at 2567.  The facts underlying the 5th Amendment claim differed in time from the facts underlying the 6th Amendment claim.  <u>Id.</u>  The Court concluded that the 5th and 6th Amendment claims differed in both time and type, and therefore the 5th Amendment claim did not relate back to the original petition and was time-barred.  <u>Id.</u> at 2573.  Under Rule 15(c)(2), the Court held that new claims do not relate back to the original petition if they assert a new ground for

1    relief supported by facts that differ in both time and type from those claims included in the

2    original petition. Id. at 2566.

3            In adopting a "time and type" analysis for relation back, the Court followed the

4    majority of circuit courts that had resolved that new claims differing in both time and type

5    do not relate back to a timely-filed petition. See Davenport v. United States, 217 F.3d at

6    1341, 1346 (11th Cir. 2000) (stating that newly-offered claims of IAC do not relate back to

7    timely-filed claims of IAC because they were based on different sets of facts); United

8    States v. Pittman, 209 F.3d 314, 317-18 (4th Cir. 2000) (stating that claims regarding

9    obstruction of justice enhancement and failure of counsel to file an appeal do not relate

10   back to claims that the district court lacked jurisdiction to impose an enhanced sentence

11   and the government failed to establish by a preponderance of the evidence that the drugs

12   at issue were crack cocaine); United States v. Duffus, 174 F.3d 333, 337-38 (3rd Cir. 1999)

13   (stating that a claim of IAC for failing to move to suppress evidence did not relate back to

14   a claim of IAC for failing to contend on appeal that evidence was insufficient to support

15   conviction); United States v. Craycraft, 167 F.3d 451, 457 (8th Cir. 1999) (stating that IAC

16   claims alleged in a timely-filed petition were separate from other IAC claims because

17   "[f]ailing to file an appeal is a separate occurrence in both time and type from a failure to

18   pursue a downward departure or failure to object to the type of drugs at issue").  However,

19   in contrast, if the new claim merely clarifies or amplifies a claim or theory already in the

20   original petition, the new claim may relate back to the date of the original petition and avoid

21   a time bar. See Woodward v. Williams, 263 F.3d 1135, 1142 (10th Cir. 2001).

22                         *1. Lodged Petition Claim 11*

23           In Claim 11, Petitioner asserts four separate claims of IAC at sentencing.  In review

24   of Claim 11(A), asserting that sentencing counsel failed to develop a mitigation case for

25   life, this claim relies upon a legal theory and a similar factual basis that was presented to

26   the Court in the Amended Petition and found exhausted. (Dkt. 29 at 39.)  Because Claim

27   11(A) merely amplifies a claim or theory already in the original petition, it may be added to

28   the Amended Petition and it will relate back to the filing date of the Amended Petition.  See

1   <u>Woodard</u>, 263 F.3d at 1142.   In Claim 11(C), Petitioner argues that sentencing counsel

2   prevented meaningful appellate review of mitigation because he submitted the mitigation

3   report of Psychologist Donald Tatro at sentencing.   Claim 11(C) relies upon an factual basis

4   already being used in support of other habeas claims.   The only difference is a new legal

5   theory--that counsel, by filing the report, prevented meaningful appellate review of

6   mitigation.   Because Claim 11(C) merely amplifies a claim or theory already in the original

7   petition, it may relate back to the Amended Petition.   <u>See</u> <u>Felix</u>, 125 S. Ct. at 2575.

8   Petitioner's motion to amend to add Claim 11(A) and 11(C) will be granted.

9        Claims 11(B) (counsel failed to secure expert assistance) and 11(D) (counsel advised

10  Petitioner not to speak to the presentence report writer) are new allegations of IAC at

11  sentencing which were not part of the Amended Petition.   These new factual allegations

12  of IAC at sentencing differ from the IAC allegations previously raised in the Amended

13  Petition and constitute separate IAC claims.   <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668,

14  690 (1984) (stating that a petitioner making an IAC claim must identify the particular acts

15  or omissions of counsel that are alleged not to have been the result of reasonable

16  professional judgment).   Petitioner's new allegations of IAC at sentencing do not arise out

17  of the same facts included in the Amended Petition, but arose from separate conduct and

18  occurrences in both time and type.   As noted in <u>Felix</u>, "each separate congeries of facts

19  supporting the grounds for relief" delineates an occurrence under Rule 2(c).   <u>See</u> <u>Felix</u>, 125

20  S. Ct. at 2573 (citing Rule 2(c) of the Rules Governing Habeas Corpus Cases, which

21  instructs the petitioner to specify all grounds for relief available to him and to state the

22  facts supporting each ground.)   Therefore, Petitioner's Claims 11(B) and 11(D) do not relate

23  back to the Amended Petition and are time barred.   <u>See</u> <u>Davenport</u>, 217 F.3d at 1346.

24  Petitioner's motion to amend will be denied as to Claim 11(B) and 11(D).

25          *2. Lodged Petition Claims 16-27*

26        Based upon <u>Mayle v. Felix</u>, Respondents argue that Claims 16-27 are time barred.

27  (Dkt. 123 at 5-6.)   The Court finds that Claims 16-27 rest upon factual bases separate from

28  the factual bases of claims already presented in the Amended Petition.   Additionally, all of

1  these claims present separate grounds for relief.  Consequently, they differ in both time and

2  type from claims already presented.  Thus, pursuant to <u>Felix</u>, Claims 16-27 do not relate

3  back to the Amended Petition and are time-barred.  <u>See</u> 125 S. Ct. at 2566 (stating that a

4  claim does not relate back "when it asserts a new ground for relief supported by facts that

5  differ in both time and type from those the original pleading set forth.").   Therefore,

6  Petitioner's motion to amend is denied as to Claims 16-27.

7        B. Lodged Petition--Claims Previously Found Procedurally Barred

8        In his Lodged Petition, Petitioner presents claims that this Court previously

9  concluded were procedurally barred.  Respondents contend that this Court's earlier ruling

10 regarding procedural bar is controlling regarding the exhaustion status of such claims and

11 therefore amendment is futile.  (Dkt. 123 at 6-11.)  Petitioner acknowledges that in his third

12 PCR, he included claims that this Court previously found procedurally barred.  (Dkt. 127

13 at 5-10.)  Nonetheless, regardless of the Court's earlier ruling, Petitioner argues that these

14 claims are now exhausted and available for merits review because the state court decision

15 denying relief on these claims did not clearly and expressly rest on a procedural bar. (<u>Id.</u>)

16       Respondents are correct that this Court previously concluded that certain claims in

17 the Amended Petition were procedurally barred.  (Dkt. 29.)  However, the Court's ruling

18 regarding claims presented in the Amended Petition did not foreclose Petitioner from

19 attempting to actually exhaust procedurally-barred claims.   Subsequently, Petitioner

20 initiated a successive PCR; those state proceedings must be analyzed to determine the

21 exhaustion status of the claims presented.

22       Because this case was filed after April 24, 1996, it is governed by the AEDPA, which

23 requires that a writ of habeas corpus not be granted unless it appears that the petitioner

24 has exhausted all available state court remedies.  28 U.S.C. § 2254(b)(1); <u>see also</u> <u>Coleman</u>

25 <u>v. Thompson</u>, 501 U.S. 722, 731 (1991); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982).  To properly

26 exhaust state remedies, the petitioner must "fairly present" his claims to the state's highest

27 court in a procedurally appropriate manner.  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 848 (1999).

28       A claim is "fairly presented" if the petitioner has described the operative facts and

the federal legal theory on which his claim is based so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim. <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982); <u>Picard v. Connor</u>, 404 U.S. 270, 277-78 (1971). A petitioner must make the federal basis of a claim explicit either by citing specific provisions of federal law or federal case law, even if the federal basis of a claim is "self-evident," <u>Gatlin v. Madding</u>, 189 F.3d 882, 888 (9th Cir. 1999), or by citing state cases that explicitly analyze the same federal constitutional claim, <u>Peterson v. Lampert</u>, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc). Such explicit fair presentation must be made not only to the trial or post-conviction court, but to the state's highest court. <u>Baldwin v. Reese</u>, 124 S. Ct. 1347, 1351 (2004).

Rule 32 of the Arizona Rules of Criminal Procedure governs when petitioners may seek relief in post-conviction proceedings and raise federal constitutional challenges to their convictions or sentences in state court. Rule 32.2 provides, in part:

> a. Preclusion. A defendant shall be precluded from relief under this rule based upon any ground:
> . . . .
> (2) Finally adjudicated on the merits on appeal or in any previous collateral proceeding;
>
> *(3) That has been waived at trial, on appeal, or in any previous collateral proceeding.*
>
> b. Exceptions. Rule 32.2(a) shall not apply to claims for relief based on Rules 32.1(d), (e), (f), (g) and (h). When a claim under [these subsections] is to be raised in a successive or untimely post-conviction relief proceeding, the notice of post-conviction relief must set forth the substance of the specific exception and the reasons for not raising the claim in the previous petition or in a timely manner. If the specific exception and meritorious reasons do not appear substantiating the claim and indicating why the claim was not stated in the previous petition or in a timely manner, the notice shall be summarily dismissed.

Ariz. R. Crim. P. 32.2 (West 2004) (emphasis added). Thus, pursuant to Rule 32.2, petitioners may not be granted relief on any claim which could have been raised on direct appeal or in a prior Rule 32 petition for post-conviction relief. Only if a claim falls within certain exceptions (subsections (d) through (h) of Rule 32.1) and the petitioner can justify why the claim was omitted will the preclusive effect of Rule 32.2 be avoided. It is firmly

1  resolved in the Ninth Circuit that Arizona's Rule 32.2(a)(3) is an adequate state-law

2  procedural bar because it is regularly and consistently applied.  See, e.g., Poland (Patrick)

3  v. Stewart, 169 F.3d 573, 585 (9th Cir. 1999).

4         *1. Lodged Petition Claims 1-3, 5(B), 6, 8, 9(F)-(I), 10(C), 14-15*

5         Petitioner raised these claims in his third PCR.  Petitioner brought these claims as

6  exceptional claims of actual innocence, thereby allowing their consideration in a successive

7  PCR. (Dkt. 116 at 26-71.)  The state court attempted to summarily dismiss these claims as

8  not falling within the scope of actual innocence, Ariz. R. Crim. P. 32.1(h).  (Id. at 307.)  The

9  state court then went on to determine which claims were procedurally barred and whether

10  any remaining claims entitled Petitioner to relief.  (Id.)  The state court held these claims

11  precluded because they either were or could have been raised on direct appeal or in a

12  previous PCR petition.  (Id. at 308.)  At issue is whether this state court ruling procedurally

13  defaulted the claims brought in the third PCR or whether the state court ruling was

14  ambiguous, thus entitling these claims to federal habeas review on the merits.

15         In order to uphold a state law procedural default and bar federal review of a claim,

16  the state court must "clearly and expressly rely on procedural default as an independent

17  and adequate state law ground."  Coleman, 501 U.S. at 735.  If an Arizona state court,

18  pursuant to Rule 32.2(a)(2), precludes further review of a claim because it has been

19  previously raised and litigated, then such a claim is exhausted and available for federal

20  habeas review.  If the state court, pursuant to Rule 32.2(a)(3), bars a claim because it could

21  have been raised on direct appeal or in a previous PCR proceeding but was not, that claim

22  is waived and procedurally defaulted.  However, if the state court does not distinguish

23  which claims are precluded from further review under (a)(2) and which claims are precluded

24  as waived under (a)(3), then the decision is ambiguous and does not clearly and expressly

25  rely on an independent and adequate state procedural default.  See Ceja v. Stewart, 97 F.3d

26  1246, 1253 (9th Cir. 1996) (reviewing the distinction between Arizona Rule of Criminal

27  Procedure 32.2(a)(2) and 32.2(a)(3) and concluding that ambiguous decisions do not

28  foreclose federal habeas review of the claims encompassed in that ruling); see also Valerio

1    v. Crawford, 306 F.3d 742, 774-75 (9th Cir. 2002) (en banc); Koerner v. Grigas, 328 F.3d 1039,

2    1049-50 (9th Cir. 2003).

3          The state court unequivocally found Claims 12, 17 and 26 procedurally defaulted.

4    (Dkt. 116 at 309.)  However, the state court's decision as to Claims 1-3, 5(B), 6, 8, 9(F)-(I),

5    10(C), 14-15 is ambiguous.    (Id. at 308.)  The state court did not distinguish between the

6    claims it found "precluded" because they had been previously raised on direct appeal or

7    in a previous PCR proceeding from the claims that were precluded as waived because they

8    could have been but were not raised either on direct appeal or in a previous PCR

9    proceeding.   (Id.)  This ambiguous state court ruling is controlled by Poland which held,

10   as follows:

11          A claim that has been found to be "precluded" under subsection
            (a)(2) appears to be a classic exhausted claim and may therefore be subject
12          to consideration in federal habeas.  See Ceja v. Stewart, 97 F.3d 1246, 1252-53
            (9th Cir.1996) (recognizing the distinction between waiver and preclusion,
13          and holding that "[p]reclusion does not provide a basis for federal courts to
            apply a procedural bar").
14
               In contrast, a claim that has been "waived" under subsection (a)(3) is
15          procedurally defaulted and therefore barred from federal court consideration,
            absent a showing of cause and prejudice or fundamental miscarriage of
16          justice.

17   Poland (Patrick), 169 F.3d at 578.

18          Therefore, Claims 1-3, 5(B), 6, 8, 9(F)-9(I), 10(C), 14 and 15 are treated as having been

19   reviewed on the merits and are available for federal review.   Amendment to add these

20   claims will be futile if a proposed claim for amendment is nevertheless meritless.  See

21   Caswell, 363 F.3d at 837-39 (conducting a two-part futility analysis reviewing both

22   exhaustion of state court remedies and the merits of the proposed claim).   Accordingly,

23   pursuant to the AEDPA, the Court will conduct a merits review of these claims to determine

24   whether leave to amend should be denied as futile.

25          AEDPA deference applies to all claims that were adjudicated on the merits; that is,

26   those claims that were not resolved on the basis of a state procedural rule or bar.   See

27   Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004).  Pursuant to the AEDPA, Petitioner

28   is not entitled to relief on any claim adjudicated on the merits in state court unless that

1    adjudication:

2          (1) resulted in a decision that was contrary to, or involved an unreasonable
          application of, clearly established Federal law, as determined by the Supreme
3          Court of the United States; or

4          (2) resulted in a decision that was based on an unreasonable determination
          of the facts in light of the evidence presented in the State court proceeding.
5

6    **§ 2254(d)(1)**

7          To assess a habeas claim under subsection (d)(1), the Court must first identify the

8    "clearly established Federal law," if any, that governs the sufficiency of the claims on

9    habeas review.  "Clearly established" federal law includes the holdings of the Supreme

10   Court at the time the petitioner's state court conviction became final.  See Williams v.

11   Taylor, 529 U.S. 362, 365 (2000).  Habeas relief cannot be granted if the Supreme Court has

12   not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner,

13   even if lower federal courts have decided the issue.  See id. at 381.  A state court decision

14   is "contrary to" clearly established federal law if it reaches a conclusion on a question of

15   law that is counter to a decision of the Supreme Court or if it applied the correct authority

16   to a case involving facts materially indistinguishable from those in a controlling Supreme

17   Court case, but nonetheless reached a different result.  Id. at 413; see also Lockyer v.

18   Andrade, 538 U.S. 63, 73 (2003); Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004).  Whether

19   a state court's interpretation of federal law is contrary to Supreme Court authority, as

20   opposed to an unreasonable application thereof, is a question of federal law as to which

21   federal courts owe no deference to the state courts.  Cordova v. Baca, 346 F.3d 924, 929-30

22   (9th Cir. 2003).

23          A state court decision amounts to an "unreasonable application" under § 2254(d)(1)

24   if the state court correctly identifies the governing "clearly established" legal principle from

25   the Supreme Court's decisions, but then makes an objectively unreasonable application

26   of that principle to the facts of the petitioner's case.  See Andrade, 538 U.S. at 75.  An

27   "objectively unreasonable" application of federal law involves more than an incorrect or

28   even clearly erroneous application of federal law.  See Williams, 529 U.S. at 410-11 ("[A]

1    federal habeas court may not issue the writ simply because that court concludes in its

2    independent judgment that the relevant state-court decision applied clearly established

3    federal law erroneously or incorrectly.    Rather, that application must also be

4    unreasonable.")    In contrast to the "contrary to" prong of § 2254(d)(1), the AEDPA

5    mandates deferential review of a state court's application of clearly established Supreme

6    Court precedent.  See Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (citing Lindh v. Murphy,

7    521 U.S. 320, 333 n.7 (1997)).

8        In considering a challenge under either the "contrary to" or "unreasonable

9    application"  prong of subsection (d)(1), state court factual determinations are presumed

10   correct pursuant to § 2254(e)(1) and can be rebutted only by clear and convincing

11   evidence.  See Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir. 2004), cert. denied 125 S. Ct.

12   809 (2004).

13       **§ 2254(d)(2)**

14       To obtain habeas relief under subsection (d)(2), the state court factual determination

15   at issue must be "objectively unreasonable" in light of the evidence presented in the state

16   court proceeding.  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); Davis v. Woodford, 384

17   F.3d 628, 637-38 (9th Cir. 2004).   As explained by the Ninth Circuit, the "unreasonable

18   determination" clause:

19           applies most readily to situations where petitioner challenges the state
             court's findings based entirely on the state record.   Such a challenge may be
20           based on the claim that the finding is unsupported by sufficient evidence,
             see, e.g., Wiggins v. Smith, 539 U.S. 510, 123 S. Ct. 2527, 2538-39, 156 L. Ed.2d
21           471 (2003); Ward v. Sternes, 334 F.3d 696, 704-08 (7th Cir. 2003), that the
             process employed by the state court is defective, see, e.g., Nunes v. Mueller,
22           350 F.3d 1045, 1055-56 (9th Cir. 2003); Valdez v. Cockrell, 274 F.3d 941, 961-68
             (5th Cir. 2001)(Dennis, J., dissenting), or that no finding was made by the
23           state court at all, see, e.g., Weaver v. Thompson, 197 F.3d 359, 363 (9th Cir.
             1999); cf. Wiggins, 123 S. Ct. at 2539-41.

24
25   Taylor, 366 F.3d at 999; cf. Norton v. Spencer, 351 F.3d 1, 7 (1st Cir. 2003) (describing

26   grounds to find state court factual determinations unreasonable under (d)(2)).

27       When a petitioner challenges a state court's factual findings under subsection

28   (d)(2), a federal court must be satisfied that an appellate court could not reasonably affirm

the finding. Taylor, 366 F.3d at 1000. "Once the state court's fact-finding process survives this intrinsic review . . . the state court's findings are dressed in a presumption of correctness, which then helps steel them against any challenge based on extrinsic evidence, *i.e.*, evidence presented for the first time in federal court." Id. The presumption of correctness may be overcome only by clear and convincing evidence, pursuant to § 2254(e)(1). Id.; see Nunes v. Mueller, 350 F.3d 1045, 1055-56 (9th Cir. 2003), cert. denied 125 S. Ct. 808 (2004).

> *(a) Claim 1   The Trial Court Violated the 8th and 14th Amendments by Instructing the Jury that it Could not Consider Petitioner's Intoxication in Determining His Mental State*

Petitioner argues that the trial court committed constitutional error when it instructed the jury not to consider his intoxication in determining his mental state to commit the crime of first degree murder. (Dkt. 120, Ex. 2 at 6.) Petitioner further contends that the trial court's jury instruction, "coupled with the [c]ourt's refusal to give Petitioner's requested instruction, violated the 8th Amendment by prohibiting the jury from fully considering his capacity to form the requisite intent to kill." (Id. at 7.)

At the time of Petitioner's trial, Arizona law only allowed introduction of intoxication evidence when specific intent was a necessary element of the crime charged. See Schurz, 176 Ariz. at 54-55, 859 P.2d at 164-65 (citing A.R.S. § 13-503,[3] which, in pertinent part, provided that the jury may only consider voluntary intoxication in determining a culpable mental state when the culpable mental state of intentionality is a necessary element of the

---

[3]     Former A.R.S. § 13-503 (1990), repealed in 1993, provided:

No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition, but when the actual existence of the culpable mental state of intentionally or with the intent to is a necessary element to constitute any particular species or degree of offense, the jury may take into consideration the fact that the accused was intoxicated at the time in determining the culpable mental state with which he committed the act.

1    offense).  Under Arizona's first degree murder statute, the State was required to prove that

2    Petitioner had either an intentional or knowing mental state that his conduct will cause

3    death.  See A.R.S. § 13-1105(A)(1).[4]  Where a defendant is charged, in part, with knowingly

4    committing first degree murder, a voluntary intoxication instruction is not permitted.  See

5    State v. Rankovich, 159 Ariz. 116, 122, 765 P.2d 518, 524 (1988).  In compliance with state

6    law, the court refused to allow him to introduce intoxication evidence as a defense to the

7    "knowing" mental state and refused to give a jury instruction indicating that voluntary

8    intoxication was a defense to the first degree murder charge.

9         A challenge to a jury instruction that alleges an error under state law does not state

10   a claim cognizable in federal habeas corpus proceedings.  See Estelle v. McGuire, 502 U.S.

11   62, 71-72 (1991).  A state trial court's failure to give a jury instruction does not raise a

12   cognizable federal claim unless the failure so infected the trial that the defendant was

13   deprived of the fair trial guaranteed by the Due Process Clause of the 14th Amendment.

14   See Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988).  "A federal court is limited to

15   deciding whether a conviction violated the Constitution."     Estelle, 502 U.S. at 480.

16   Because the omission of an instruction is less likely to be prejudicial than a misstatement

17   of the law, a habeas petitioner whose claim involves a failure to give a particular instruction

18   bears an "especially heavy" burden. See Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

19        As earlier indicated, the trial court complied with Arizona law in not giving a

20   voluntary intoxication instruction.   The Arizona legislature has wide latitude in

21   promulgating state substantive law.  See State v. Ramos, 133 Ariz. 4, 6, 648 P.2d 119, 121

22   (1982).  The Constitution "reserves to the states considerable freedom in defining crimes,

23   including mental elements required, and in establishing penalties for the crimes defined."

24

25        [4]        A.R.S. § 13-1105(A)(1) (1990) provides, in pertinent part:

26

27        A person commits first degree murder if: (1) Intending or knowing that his
         conduct will cause death, such person causes the death of another with
28       premeditation.

Id. (citing Powell v. Texas, 392 U.S. 514, 535-36 (1968)). In defined circumstances, Arizona has determined that public policy dictates that one who voluntarily seeks the influence of alcohol should not be insulated from criminal responsibility. See Ramos, 133 Ariz. at 6-7, 648 P.2d at 121-22 (concluding that A.R.S. § 13-503 does not violate a defendant's constitutional rights).

The Ramos court's public policy pronouncement regarding intoxication evidence does not violate the Constitution. In Montana v. Egelhoff, 518 U.S. 37 (1996) (plurality), the Court ruled that a similar Montana statute, which barred the introduction of voluntary intoxication evidence in order to determine the existence of a mental state, did not offend the Constitution. The Supreme Court held that the Due Process Clause is not offended by such a statute unless the statute violated a fundamental principle of justice. Id. at 43. The Court concluded that a state's definition of a mental state to eliminate the exculpatory value of voluntary intoxication does not offend fundamental principles of justice. Id. at 58-59. Because the Supreme Court has not "broken sufficient legal ground" on the constitutional principle advanced by the Petitioner in this claim, habeas relief cannot be granted. See Williams, 529 U.S. at 381. Therefore, amendment to add Claim 1 would be futile and is denied.

> (b) Claim 2    Petitioner's Conviction violated the 5th, 6th, 8th and 14th Amendments because there was insufficient evidence to establish the element of premeditation
>
> Claim 15    Insufficient Evidence Existed to Sustain Petitioner's First Degree Murder Verdict[5]

In Claim 2, Petitioner contends that the evidence at trial failed to establish premeditation because (1) his voluntary intoxication rendered him incapable of premeditation; (2) any act committed by him was in the heat of passion as the murder occurred directly after a fight; and (3) there was no reliable evidence that Petitioner knew

---

[5]    During his third PCR, Petitioner only exhausted the claim that there was insufficient evidence to sustain his first degree murder conviction; he did not exhaust a similar claim as to the other convictions rendered at his trial. (Dkt. 116 at 31-33.)

or intended that his conduct would kill the victim. (Dkt. 120, Ex. 2 at 11-12.) In Claim 15, Petitioner generally contends that that there was insufficient evidence to sustain his first degree murder conviction. Thus, Petitioner challenges whether he acted with premeditation, rather than out of a sudden quarrel or heat of passion. (Dkt. 120, Ex. 2 at 11 (citing the definition for premeditation, A.R.S. § 13-1101(1),[6] which element is necessary to support a conviction under Arizona's first degree murder statute, A.R.S. § 13-1105(A)(1)). Petitioner also challenges, in light of his alleged voluntary intoxication, whether reliable evidence supports premeditation before the murder.

The "rational factfinder" standard is used to determine whether there is sufficient evidence to support a state court's finding of the elements of the crime. Thus, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). A habeas court "faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution." Id. at 326.

Under Arizona law, premeditation requires that the defendant act with either the intention or knowledge that he will kill another human being, when such intention or knowledge precedes the killing by a length of time to permit reflection. See A.R.S. § 13-1101(1). Taking the evidence in a light most favorable to the prosecution, the state supreme court found that Petitioner and the victim, Bahe, got into a physical altercation.

---

[6]     A.R.S. § 13-1101(1) (1990), provides, as follows:

A.R.S. § 13-1101. Definitions. In this chapter, unless the context otherwise requires: 1. "Premeditation" means that the defendant acts with either the intention or the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by a length of time to permit reflection. An act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.

1   After the fight, the following occurred:

2          Bahe was on the ground and, in an attempt to get away, crawled under a
       chain-link fence into a small enclosed rectangular space between a stairwell
3      and a brick wall. Schurz picked up the plastic jug, smelled its contents, and
       then splashed gasoline on Bahe. Using a lighter, Schurz ignited a small
4      puddle of gasoline. When the flames failed to spread to Bahe, he kicked the
       burning puddle toward him. Bahe went up in flames.
5

6   Schurz, 176 Ariz. at 50, 859 P.2d at 160.   At sentencing, the trial court stated the facts as

7   follows:

8          [O]nce the victim crawled under the chain link fence in an attempt to escape
       from Schurz, Bahe was essentially helpless and he effectively ended the
9      confrontation and the attempted robbery.   Nevertheless, instead of simply
       leaving the scene, Schurz picked up the container of gasoline, smelled it to
10     determine what it was, intentionally splashed it on the victim and purposely
       lit it on fire.   When he saw the fire was on the ground instead of on the
11     victim, he then purposely kicked the flame toward the victim so that his goal
       of setting the victim on fire would be accomplished.

12  ROA 137 at 5.[7]   Both accounts were based on testimony received at trial from Patrick

13  Allison.   Allison, a co-defendant, pled guilty and agreed to testify for the prosecution days

14  before trial.   Allison testified that after the fight, Bahe crawled under a fence enclosure.

15  Realizing Bahe was trapped, Petitioner doused him with gasoline.   After dousing Bahe with

16  gasoline, Allison testified that "[Petitioner] pulled–I believe it was a lighter from out of his

17  pocket and he lit the puddle [of gasoline] on fire.   The fire did not go toward the guy so he

18  flicked it with his foot. . . .   Well, the puddle was on the ground, on the stair, and he flicked

19  it towards the guy that was doused with the gasoline, with his foot, and immediately the

20  whole guy went up in flames.   And after that we just turned around and walked off." (R.T.

21  6/6/90 at 103.)[8]

22         Regarding, both Claim 2 and Claim 15, taking the evidence in a light most favorable

23  to the prosecution, a rational trier of fact could conclude beyond a reasonable doubt that

24  _____

25     [7]     "ROA" refers to documents in the five-volume record on appeal from trial,
    sentencing, and the first and second petitions for post-conviction relief.   Copies of the
26  record on appeal, as well as the trial transcripts and the pleadings filed in the Arizona
    Supreme Court, were provided to this Court by counsel for Respondents. (Dkt. 25.)
27

28     [8]     "RT" refers to the reporter's transcripts of Petitioner's trial.

1  Petitioner knowingly killed the victim and that such knowledge preceded the killing by a
2  length of time to permit reflection.  As the record indicates, the fight between Petitioner and
3  the victim was over.  The victim had crawled into a fenced-in area space to protect himself
4  from Petitioner.  Petitioner could have walked away but instead took deliberate steps to kill
5  the victim.

6          Premeditation may be proved by circumstantial evidence.  See State v. Thompson,
7  204 Ariz. 471, 476, 65 P.3d 420, 425 (2003) (discussing the history of premeditation in
8  Arizona and indicating as early as 1946 that proof of premeditation may be inferred from
9  the facts and circumstances of the killing).   The circumstantial evidence in this case
10  strongly supports that Petitioner knowingly killed the victim with premeditation beyond
11  a reasonable doubt.   Petitioner deliberately planned to kill the victim as he doused the
12  victim with gasoline and then kicked a puddle of gasoline fire on him.  See State v. Vickers,
13  159 Ariz. 532, 541, 768 P.2d 1177, 1186 (1989) (concluding that there was evidence of
14  premeditation beyond a reasonable doubt when the defendant threw flammable liquid onto
15  the victim and then lit the victim on fire); see also Thompson, 204 Ariz. at 479, 65 P.3d at
16  428 (stating that the state may use all of the circumstantial evidence at its disposal to prove
17  premeditation including "a pattern of escalating violence between the defendant and the
18  victim.").

19          Petitioner also complains about Allison's reliability as a witness.  However, there
20  was no evidence presented to the contrary.  Moreover, the jury judged Allison's credibility
21  and a jury's credibility determinations are entitled to significant deference.  See Bruce v.
22  Terhune, 376 F.3d 950, 957 (9th Cir. 2004) (citing Schlup v. Delo, 513 U.S. 298, 330 (1995),
23  for the proposition that assessment of credibility of witness is generally beyond the scope
24  of habeas review).   A rational trier of fact could conclude beyond a reasonable doubt that
25  Petitioner knowingly killed the victim and that such knowledge preceded the killing by a
26  length of time to permit reflection.  Based on the lack of merit of Claim 2 and 15, the Court
27  denies Petitioner's motion to reamend these claims into the Amended Petition.

28

*(c) Claim 3    Petitioner's Death Sentence for felony murder violates the 5th, 6th, 8th and 14th Amendments*

Hypothetically, Petitioner argues that if this Court invalidates Petitioner's conviction for premeditated first degree murder, then his death sentence for felony murder should also be invalidated because there is insufficient evidence to support his felony murder conviction. (Dkt. 120 at 13-16.) This claim is without merit because the Court has found Petitioner's <u>Jackson</u> challenge to his premeditated first degree murder conviction to be meritless. Even if there was error in the felony murder conviction, Petitioner's death sentence stands on the basis of his conviction for premeditated first degree murder. Based on the lack of merit of Claim 3, the Court denies Petitioner's motion to reamend it into the Amended Petition.

*(d) Claim 5:    The Trial Court's Evaluation of Petitioner's Intoxication Evidence as Mitigation Violated the 8th Amendment*

Petitioner raises two separate arguments in Claim 5 related to the trial court's evaluation of mitigation evidence at sentencing. In a previous Order, this Court determined that Claim 5(A)–the trial court's alleged failure to find Petitioner's intoxication as a statutory mitigating circumstance–was exhausted and entitled to a merits review. However, the Court did not finally determine the procedural status of Claim 5(B)–the trial court's alleged failure to consider his intoxication as a non-statutory mitigating circumstance. (Dkt. 29 at 28.) The Court concludes that judicial efficiency is best served by resolving both aspects of Claim 5 on the merits at this time.

<u>Claim 5(A)  Failure to Find Intoxication as Statutory Mitigation</u>

Petitioner argues that the overwhelming evidence presented at his sentencing substantiated that he was intoxicated at the time of the murder and that the trial court erred by not finding and concluding that such intoxication established a statutory mitigating circumstance. (Dkt. 120, Ex. 2 at 21-22.) Due to his intoxication at the time of the offense, Petitioner argues that his "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired. (<u>Id.</u> (citing

1   A.R.S. § 13-703(G)(1) (1993)).)

2       Although the sentencer, in a capital proceeding, may not refuse to consider
3   constitutionally relevant mitigating evidence, it is constitutionally permissible for a state
4   death penalty statute to impose on defendants the burden of establishing the existence of
5   a mitigating circumstance by a preponderance of the evidence. See Walton v. Arizona, 497
6   U.S. 639 (1990) (plurality), overruled on other grounds, Ring v. Arizona, 536 U.S. 584 (2002);
7   see also Delo v. Lashley, 507 U.S. 272, 275 (1993) (per curiam) (stating that "we recently
8   made clear that a State may require the defendant to bear the risk of nonpersuasion as to
9   the existence of mitigating circumstances") (other citation omitted).  In a weighing state like
10  Arizona, if the sentencer determines that a mitigating circumstance has been established
11  by a preponderance of the evidence, the 8th and 14th Amendments further require that
12  such evidence be given whatever effect, or weight, the sentencer deems appropriate.  See
13  Richmond v Lewis, 506 U.S. 40, 47-48 (1992);  see also Johnson v. Texas, 509 U.S. 350, 367
14  (1993) (stating that the sentencer must be able to give effect to relevant mitigation that has
15  been established by the evidence).  However, the Constitution does not require that a
16  death penalty statute assign a specific weight to any particular mitigating factor
17  established at sentencing.  See Harris v. Alabama, 513 U.S. 504, 512 (1995).  The Harris
18  Court explained that requiring states to assign particular weight to mitigation would "place
19  within constitutional ambit micromanagement tasks that properly rest within the [s]tate's
20  discretion to administer its criminal justice system."  Id.  Thus, it is under the control of
21  state law whether a mitigating circumstance exists and, if established, the weight to be
22  assigned to it.  Cf. Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (stating that the existence of an
23  aggravating circumstance is a state law question).

24      Regarding the degree of Petitioner's intoxication at the time of the murder, the
25  sentencing court, based upon the report of Petitioner's psychologist, Dr. Donald Tatro,
26  concluded that his degree of intoxication did not rise to the level of a statutory mitigating
27  circumstance. The Arizona Supreme Court reviewed those findings, as follows:

28

1
2
3
4
5
6

   Later, however, Schurz confessed to Dr. Tatro, who performed a psychological examination for use at sentencing, that he did remember what happened and that he had previously lied to police about his memory lapse. He stated that although he had consumed a large amount of beer and used some heroin that night, he was still aware of what was happening. Dr. Tatro stated in his report that "it does not appear that [defendant] was so intoxicated at the time that he did not know what he was doing or that he was unable to appreciate the wrongfulness of his actions." He concluded, essentially, that defendant knew what he was doing but, because of his intoxication and a personality hardened by past institutionalization, simply did not care. . . .

7
8
9

   We agree with the trial court that the evidence is insufficient to establish the existence of the (G)(1) mitigating circumstance. Contrary to Schurz's argument, we do not find that an uncaring attitude, even though partially caused by drug use, constitutes an impaired ability to "appreciate" the wrongfulness of one's conduct. Nor is there evidence that Schurz's intoxication deprived him of his ability to control his conduct.

10 Schurz, 176 Ariz. at 56, 859 P.2d at 166 (footnote omitted).

11   The Arizona Supreme Court's conclusion that Petitioner's intoxication did not meet

12 the requirements for finding the existence of statutory mitigation is not contrary to nor an

13 unreasonable application of Supreme Court precedent.  It is for the sentencer to determine

14 the existence of a mitigating circumstance.  See Harris, 513 U.S. at 512.   Whether the

15 evidence supports or does not support the existence of a mitigating circumstance is a state

16 law question; it is a decision that properly rests within the state's discretion to administer

17 its criminal justice system.  Id.; Cf. Lewis v. Jeffers, 497 U.S. at 780.  Claim 5(A) is meritless

18 on its face; Petitioner is not entitled to habeas relief.

19   Claim 5(B)  Failure to Consider Intoxication as Non-Statutory Mitigation

20   Next, Petitioner argues that the trial court refused to consider his intoxication

21 evidence as non-statutory mitigation, once such mitigation was denied as a statutory

22 mitigating circumstance. (Dkt. 120, Ex. 2 at 20-23.)

23   Under the federal constitution, in capital sentencing proceedings, the sentencer,

24 whether by statute or case law or any other legal barrier, must not be precluded from

25 considering relevant mitigation evidence.  See Lockett, 438 U.S. 586 (1978).  In Lockett and

26 later in Eddings v. Oklahoma, 455 U.S. 104 (1982), the Supreme Court established that under

27 the 8th and 14th Amendments, the sentencer may not be precluded from considering and

28 may not refuse to consider any constitutionally relevant mitigating evidence.  Eddings, 455

1    U.S. at 113-14.   Constitutionally relevant mitigating evidence is "any aspect of a

2    defendant's character or record and any of the circumstances of the offense that the

3    defendant proffers as a basis for a sentence less than death." Lockett, 438 U.S. at 604. The

4    Constitution and the clearly established law require only that the sentencing court hear

5    and consider all constitutionally relevant mitigation evidence, but the court may determine

6    the *weight* to accord such evidence.   See Eddings, 455 U.S. at 114-15 (emphasis added).

7    On habeas review, the habeas court does not evaluate the substance of each and every

8    piece of evidence submitted as mitigation; rather, it reviews the state court record to ensure

9    that the state court allowed and considered all relevant mitigation.   See Jeffers v. Lewis, 38

10   F.3d 411, 418 (9th Cir. 1994) (holding that when it is evident that all mitigating evidence was

11   considered, trial court is not required to discuss each piece of such evidence). Ultimately,

12   this Court must assess whether the Arizona Supreme Court's conclusion–that the trial

13   court considered all proffered mitigation evidence–was contrary to or an unreasonable

14   application of the principles set forth in Lockett and Eddings.

15       In Arizona, sentencing courts have been instructed that if mitigation does not rise

16   to the level of a statutory mitigating circumstance, relevant mitigation must be considered

17   as non-statutory mitigation in order to determine whether the defendant should be treated

18   with leniency.   See State v. McMurtrey, 136 Ariz. 93, 102, 664 P.2d 637, 646 (1983).   In the

19   special verdict, in addition to finding that Petitioner experienced alcohol dependance and

20   mixed substance abuse as non-statutory mitigating factors, the sentencing court stated

21   that it considered these mitigating factors as well as all those listed in Petitioner's

22   sentencing memorandum.   (ROA 137 at 8.)   Petitioner's allegations of intoxication at the

23   time of the crime were argued to the sentencing court in his sentencing memorandum.   (Id.)

24   Thus, the sentencing record demonstrates that the sentencing court as well as the Arizona

25   Supreme Court were able to and did consider Petitioner's intoxication evidence as non-

26   statutory mitigation.   See Schurz, 176 Ariz. at 55-57, 859 P.2d at 165-67.   The Arizona

27   Supreme Court's conclusion – that the trial court considered all proffered mitigation

28   evidence – was not contrary to or an unreasonable application of the principles set forth

1   in <u>Lockett</u> and <u>Eddings</u>.  Claim 5(B) is meritless; Petitioner is not entitled to habeas relief.

2     *(e) Claim 6  The Disparity Between Petitioner's Sentence and that*

3              *of Patrick Allison Violates the 8th Amendment*
              *Because the Death Penalty May Not Be Imposed in an*

4              *Arbitrary and Capricious Manner*

5    Petitioner argues that his death sentence is arbitrary and capricious under the 8th

6   Amendment because of the disparity between the death sentence he received and the

7   sentence received by his co-defendant, Patrick Allison.

    In <u>Pulley v. Harris</u>, 465 U.S. 37, 43-45 (1984), the Court held that the 8th Amendment

8   does not require a state appellate court to determine whether the death sentence imposed

9   is proportional to that imposed in other similar cases.  The Court further stated that states

10  that did provide comparative proportionality review did so as an additional safeguard

11  against allowing an arbitrary and capricious death sentence to stand, not because such

12  comparative review was constitutionally mandated.  <u>Id.</u> at 50; <u>see also</u> <u>Walton v. Arizona</u>,

13  497 U.S. 639, 655-56 (1990) (stating that, after review of Arizona's death penalty

14  procedures, comparative proportionality is not constitutionally required in Arizona).

15    Under the AEDPA, Claim 6 is not contrary to or an unreasonable application of

16  Supreme Court precedent because the Supreme Court has stated that there is no federal

17  constitutional right to comparative proportionality review.  Consequently, this claim is

18  meritless.  Amendment to reamend this claim would be futile and is, therefore, denied.

19     *(f) Claim 8: Petitioner's 6th Amendment Right to Confront*

20             *Witnesses and his 5th and 14th Amendment Right to*
             *Due Process was Violated*

21

22    Petitioner argues that the trial court violated his 6th Amendment right to confront

23  witnesses and his 14th Amendment right to due process when the trial court overruled

24  defense counsel's objection and allowed Patrick Allison to testify regarding a statement

    Petitioner allegedly made to Julie Moore.  At trial, the prosecution elicited testimony from

25  Patrick Allison, who testified that he overheard Petitioner tell Moore that "[the victim]

26  wouldn't give me the money or the beer so I burned him."  (R.T. 6/6/90 at 107.)

27    On federal habeas review, the Court may only consider whether Petitioner's

28

conviction violated the Constitution, laws or treaties of the United States.  <u>Estelle</u>, 502 U.S. at 67; <u>Gerlaugh v. Stewart</u>, 129 F.3d 1027, 1032 (9th Cir. 1997).  A state court's evidentiary ruling may be grounds for habeas relief only if it renders the state proceeding so fundamentally unfair as to violate due process.  <u>Estelle</u>, 502 U.S. at 75; <u>Bueno v. Hallahan</u>, 988 F.2d 86, 87 (9th Cir. 1993).

In this case, the challenged out-of-court statement was made by Petitioner himself, which makes the statement an admission of a party opponent, which is not hearsay.  <u>See</u> Ariz. R. Evid. 801(d)(2)(A).  Since the out-of-court statement was made by Petitioner himself, he can claim no confrontation claim violation.  <u>See</u> <u>United States v. Moran</u>, 759 F.2d 777, 786 (9th Cir. 1985).  Similarly, regarding the state court ruling, admission of the statement creates no fundamental unfairness under the Due Process Clause of the 14th Amendment which would be grounds for habeas relief.  Consequently, this claim is meritless.  Amendment to reamend this claim would be futile and is, therefore, denied.

> *(g)    Claim 9(F):    Petitioner was Denied Effective Assistance of Counsel at Trial: Trial Counsel was Ineffective by Failing to Prevent Admission of Hearsay Statements of Julie Moore; Failure to Request Rule 104 Hearing; Failure to Follow Up Impeachment of Patrick Allison*
>
> *Claim 9(G):    Petitioner was Denied Effective Assistance of Counsel at Trial: Trial Counsel was Ineffective for Failing to Call Julie Moore to Rebut any Claims that Petitioner made Inculpatory Statements*
>
> *Claim 9(H):    Petitioner was Denied Effective Assistance of Counsel at Trial: Trial Counsel was Ineffective for Failing to Preclude or Rebut the Testimony of Criminalist Greg Ballard and for Retaining His Own Expert to do so.*
>
> *Claim 9(I):    Petitioner was Denied Effective Assistance of Counsel at Trial: Trial Counsel was Ineffective for Failing to Test Petitioner's Blood for Alcohol Levels.*

In Claim 9, Petitioner asserts various IAC allegations that occurred during the guilt phase of his trial.  IAC at the trial phase of a capital case is not an issue where the Court encounters a paucity of legal authority in the Ninth Circuit.  Due to the importance of effective counsel and the severity of the penalty at issue, the Ninth Circuit has frequently addressed this issue and on numerous occasions granted habeas relief.  <u>See, e.g.,</u> <u>Daniels</u>

1 v. Woodford, 428 F.3d 1181 (9th Cir. 2005); Alcala v. Woodford, 334 F.3d 862 (9th Cir.

2 2003); Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002); Rios v. Rocha, 299 F.3d 796 (9th Cir.

3 2002); Avila v. Galaza, 297 F.3d 911 (9th Cir. 2002); Jones v. Wood, 207 F. 3d 557 (9th Cir.

4 2000); Lord v. Wood, 184 F.3d 1083 (9th Cir. 1999). Reviewing the allegations set forth in

5 the Lodged Petition, the Court cannot summarily conclude that Petitioner's IAC claims are

6 facially meritless. Accordingly, the Court will allow Claims 9(F)-9(I) to be reamended into

7 the petition and will order supplemental briefing on the merits.

8            (h)   Claim 10(C):   *Petitioner was Denied Effective Assistance of Counsel*
                                   *at Sentencing:  Trial Counsel was Ineffective for*
9                                  *Failing to Adequately Prepare His Mental Health*
                                   *Expert to Assist in Petitioner's Case for Life*
10

11           In Claim 10(C), Petitioner asserts an IAC allegation that occurred during the

12 sentencing phase of his trial. Due to the importance of effective counsel and the severity

13 of the penalty at issue, the Ninth Circuit has frequently addressed this issue and has

14 frequently granted habeas relief. See, e.g., Summerlin v. Schriro, 427 F.3d 623 (9th Cir. 2005);

   Douglas v. Woodford, 316 F.3d 1079 (9th Cir. 2003); Karis v. Calderon, 283 F.3d 1117 (9th
15
   Cir. 2002); Mayfield v. Woodford, 270 F.3d 915 (9th Cir. 2001) (en banc); Ainsworth v.
16
   Woodford, 268 F.3d 868 (9th Cir. 2001); Jackson v. Calderon, 211 F.3d 1148 (9th Cir. 2000).
17
   Reviewing the allegations set forth in the Lodged Petition, the Court cannot summarily
18
   conclude that this IAC claim is facially meritless. Accordingly, the Court will allow Claim
19
   10(C) to be reamended into the petition and will order supplemental briefing on the merits.
20
             (i) Claim 14:        *The Trial Court Erred in Allowing Introduction*
21                                 *of Prejudicial Bad Act Testimony in Violation of*
                                   *the 5th, 6th, 8th and 14th Amendment*
22

23           Petitioner alleges that the trial court's admission of certain bad act testimony under

24 Ariz. R. Evid. 404(b) violated his rights under the 5th, 6th, 8th and 14th Amendments.

25 Petitioner contends that the trial court should not have allowed the State to introduce

26 evidence that (1) prior to the homicide, Petitioner robbed Marcella Bonito of her beer, and

27 (2) after the homicide, in the course of a robbery, Petitioner held a lit cigarette lighter up to

28 the face of a man who picked up Petitioner, Patrick Allison and Julie Moore in his car. (Dkt.

1   120 at Ex. 2 at 92-93.)  Petitioner contends that admission of such evidence denied him a
2   fundamentally fair trial.

3        A federal habeas court is prohibited from reviewing whether "other crimes"
4   evidence was properly admitted by the state trial court pursuant to Ariz. R. Evid. 404(b),
5   which is a matter of state evidentiary law.  See Jammal v. Van DeKamp, 926 F.2d 918, 919-20
6   (9th Cir. 1991).  The issue is not whether introduction of the evidence violated state law
7   evidentiary principles, but whether the trial court committed an error which rendered the
8   trial so fundamentally unfair that it violated federal due process.  Id. at 20.

9        The United States Supreme Court has narrowly defined the category of infractions
10  that violate the due process test of fundamental unfairness.  See Dowling v. United States,
11  493 U.S. 342, 352-54 (1990).  In Dowling, the Supreme Court suggested that evidentiary
12  rulings regarding 404(b)-type evidence do not implicate federal due process concerns.  Id.
13  The Dowling Court declined to hold that evidence of other crimes or wrongs was so
14  extremely unfair that its admission violated fundamental conceptions of justice, especially
15  when the trial court issued a limiting instruction to guard against possible misuse of such
16  evidence.  Id.; see also Estelle, 502 U.S. at 75 & n.5.  There is no clearly established
17  Supreme Court precedent holding that a state violates fundamental fairness if it admits
18  propensity evidence in the form of other bad acts evidence.  Absent such authority,
19  habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal
20  ground" on a constitutional principle advanced by a petitioner.  See Williams, 529 U.S. at
21  381.

22       Even if such Supreme Court precedent existed, however, the trial court in this case
23  issued a limiting instruction to guard against any misuse of the admitted evidence.  (See
24  R.T. 6/8/90 at 78; ROA 99 at 4.)  Absent Supreme Court authority to the contrary, Claim 14
25  is meritless on its face; amendment to reamend this claim would be futile and is, therefore,
26  denied.

27              *2. Lodged Petition Claim 10(A) and 10(B)*

28       In the third PCR, Petitioner neither attempted to exhaust Lodged Petition Claim 10(A)

1   (sentencing counsel's submission of the mitigation report of Dr. Donald Tatro was

2   presumptively prejudicial) nor 10(B) (sentencing counsel was IAC for submitting to the

3   court the mitigation report of Dr. Donald Tatro).  Therefore, Claims 10(A) and 10(B) remain

4   procedurally barred.  (Dkt. 29 at 39-41.)

5              *3. Lodged Petition Claim 12*

6       In the third PCR, Petitioner did attempt to exhaust the claim that cumulative IAC

7   errors on the part of counsel, even if they do not merit relief individually, entitle him to

8   relief.  (Dkt. 116 at 66-67.)  The PCR court summarily dismissed this claim as not asserting

9   a ground for which successive PCR relief is available.  (Dkt. 116 at 309.)  Based on the

10  summary dismissal, Respondents contend that Claim 12 continues to be procedurally

11  barred, as this Court earlier determined.  (Dkt. 123 at 18-19 (referencing dkt. 29 at 41).)

12      Under Arizona law, the initial and any successive PCR are commenced by the filing

13  of a notice of PCR.  Rule 32.4(a), Ariz. R. Crim. P.  However, different procedural rules

14  govern an initial PCR proceeding from a successive PCR proceeding.  Successive PCR

15  rules only allow certain exceptional claims to be filed.  Id.  These include matters such as

16  newly discovered evidence, a significant change in the law or evidence of actual

17  innocence.  See Ariz. R. Crim. P. 32.1(e)-(h).  In order to ensure that successive PCRs are

18  only utilized in exceptional circumstances, the successive notice of PCR, "must set forth

19  the substance of the specific exception and the reasons for not raising the claim in the

20  previous petition or in a timely manner.  If the specific exception and meritorious reasons

21  do not appear substantiating the claim and indicating why the claim was not stated in the

22  previous petition or in a timely manner, the notice shall be summarily dismissed."  Ariz. R.

23  Crim. P. 32.2(b).

24      A claim is procedurally defaulted if it was raised in state court but found by that

25  court to be defaulted on state procedural grounds.  Coleman, 501 U.S. at 729-30.  Regarding

26  Claim 12, the state court did not reach the merits of this claim but, based on Arizona's Rule

27  32.2(b), summarily dismissed it on state procedural grounds.  (Dkt. 116 at 309.)  See State

28  v. Rosales, 205 Ariz. 86, 90, 66 P.3d 1263, 1267 (App. 2003) (construing Rule 32.2(b) and

1   stating that if a trial court is presented with a successive notice of PCR in which no claim
2   under Rule 32.1(d) through (h) is articulated, the court should summarily dismiss the
3   notice).   Regarding Claim 12, the PCR court expressly dismissed this claim; it is
4   procedurally defaulted. (Dkt. 116 at 309.)

5       Petitioner contends that the state court's summary dismissal of this claim is
6   insufficient to foreclose federal review.   (Dkt. 127 at 4-10, 15.)   Petitioner's summary
7   contention must be rejected.   Claim 12 is procedurally defaulted.   The Court has already
8   provided an opportunity and determined that Petitioner's cause and prejudice/fundamental
9   miscarriage of justice arguments do not overcome any procedural default. (Dkt. 29 at 41.)
10  Claim 12 is procedurally barred.

11                      *4. Lodged Petition Claim 13*

12      In Petitioner's third PCR, he attempted to exhaust a claim of IAC of appellate
13  counsel.  (Dkt. 116 at 64-65.)  However, he failed to allege any factual basis for this claim
14  to the Arizona Supreme Court; rather, he only stated a generic allegation of appellate IAC.
15  (Dkt. 113 at 41.)  Consequently, Petitioner failed to fairly present his appellate counsel IAC
16  claim.

17      Allegations of IAC constitute separate claims, each of which must be exhausted in
18  state court. See Strickland v. Washington, 466 U.S. 668, 690 (1984) (stating that a petitioner
19  making an IAC claim must identify the particular acts or omissions of counsel that are
20  alleged not to have been the result of reasonable professional judgment).   The Ninth
21  Circuit has confirmed that a generic IAC claim is insufficient to exhaust particular IAC
22  allegations. See Carriger v. Lewis, 971 F.2d 329, 333-34 (9th Cir. 1992) (en banc).  Thus, in
23  order to exhaust specific IAC allegations, Petitioner needed to fairly present those
24  allegations to the Arizona Supreme Court.   See Baldwin v. Reese, 124 S. Ct. 1347, 1351
25  (2004) (stating that explicit fair presentation must be made not only to the trial or post-
26  conviction court, but to the state's highest court).

27      In Arizona, in a petition for review arising from the denial of post-conviction relief,
28  state rules require the petitioner to identify both the issues and the material facts for the

1    appellate court's consideration.  Ariz. R. Crim. P.  32.9(c)(1)(i-ii).  Further, the petition for

2    review may not utilize incorporation by reference to present issues for review; rather, in the

3    petition, the petitioner must present both argument and facts in support of the claims for

4    which review is sought.  Id. 32.9(c)(1)(iv).  An appendix may only be utilized to provide the

5    appellate court with the trial record of the issues.  Id.

6         Here, Petitioner did not present any allegations of appellate IAC in his petition for

7    review.  (Dkt. 113 at 41.)  Based on this record, Petitioner failed to exhaust appellate IAC

8    allegations to the Arizona Supreme Court.  If Petitioner were to return to state court now

9    and attempt to litigate Claim 13, it would be found waived and untimely under Rules

10   32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall

11   within an exception to preclusion.  See Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h).  Therefore, the

12   claim is "technically" exhausted but procedurally defaulted because Petitioner no longer

13   has an available state remedy.  Coleman, 501 U.S. at 732, 735 n.1.  The Court has already

14   provided an opportunity for Petitioner's cause and prejudice/fundamental miscarriage of

15   justice arguments.  (Dkt. 19 at 48-50.)  Such arguments do not overcome any procedural

16   default. Claim 13 is procedurally barred.

17        C.  Petitioner's Motion for Reconsideration from Denial of Evidentiary Hearing

18        Motions for reconsideration are appropriate only in rare circumstances.  Sullivan v.

19   Faras-RLS Group, Ltd., 795 F. Supp. 305, 308-09 (D. Ariz. 1992).

> The motion to reconsider would be appropriate where, for example, the court
> has patently misunderstood a party, or has made a decision outside the
> adversarial issues presented to the court by the parties, or has made an error
> not of reasoning but of apprehension.  A further basis for a motion to
> reconsider would be a controlling or significant change in the law or facts
> since the submission of the issue to the court.  Such problems rarely arise
> and the motion to reconsider should be equally rare.

24   Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983); see

25   also Defenders of Wildlife v. Browner, 909 F. Supp. 1342, 1351 (D. Ariz. 1995).  A motion

26   for reconsideration should not be used to ask a court "to rethink what the court had

27   already thought through -- rightly or wrongly."  Above the Belt, Inc., 99 F.R.D. at 101.

28   Such arguments should be directed to the court of appeals.  Sullivan, 795 F. Supp. at 308.

1      First, Petitioner requests that if the Court allows amendment of claims to his habeas

2   petition, he should also be allowed to submit a supplemental motion for discovery and

3   evidentiary hearing regarding such claims.  (Dkt. 131 at 2-4.)   The Court agrees and will

4   authorize such briefing.

5      Next, pursuant to 28 U.S.C. § 2254(e)(2), Petitioner requests the Court to reconsider

6   diligence conclusions regarding the actions of PCR counsel during his first PCR in

7   developing the factual basis of Claim 9, which raised allegations of IAC at his trial. (Dkt.

8   131 at 4.)   Petitioner reargues that the short time frame allowed to prepare his first PCR

9   petition resulted in PCR counsel not requesting appropriate investigative assistance.   (Id.)

10  The Court denies this contention for the reasons previously stated. (Dkt. 128 at 6-8.)

11     Next, based on Moormann v. Schriro, 426 F.3d 1044 (9th Cir. 2005), Petitioner argues

12  that PCR counsel did not request investigative assistance to develop Claim 9 because his

13  direct appeal and first PCR counsel were one and the same attorney and such counsel

14  could not raise appellate IAC claims due to a conflict of interest.   (Dkt. 131 at 4-5.)

15  Moormann is not pertinent; in Claim 9, the Court evaluated Petitioner's diligence in

16  developing the factual basis of his claim that trial counsel rendered IAC at trial and

17  sentencing, not appellate IAC allegations.

18     Next, Petitioner reargues that he diligently attempted to develop the factual bases

19  of Claims 10(A) and 10(B) in state court.  (Dkt. 131 at 5-9.)   The Court denies this

20  contention for the reasons previously stated. (Dkt. 128 at 8-18.)

21     Next, Petitioner argues that IAC of PCR counsel should not be attributable to him.

22  (Dkt. 131 at 9-11.)  A motion for reconsideration is not an appropriate time to raise new legal

23  arguments.   Regardless, allegations of IAC of PCR counsel cannot result in an independent

24  constitutional violation. See Coleman, 501 U.S. at 755.  There is no constitutional right to

25  counsel in state PCR proceedings.   See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987);

26  Murray v. Giarratano, 492 U.S. 1, 7-12 (1989) (stating that the Constitution does not require

27  states to provide Counsel in PCR proceedings even when the petitioner is facing the death

28  penalty).   Thus, absent a constitutional right to counsel during PCR proceedings, attorney

1   error is attributable to Petitioner.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).

2       Finally, Petitioner reargues that even if he was not diligent, he is still entitled to a

3   hearing under 28 U.S.C. § 2254(e)(2)(A) and (B).  (Dkt. 131 at 11-12.)   This argument is

4   rejected for the same reasons previously stated. (Dkt. 128 at 18-19.)

5                               **CONCLUSION**

6       The Court concludes that Petitioner's renewed motion to amend his Amended

7   Petition is denied as to the following claims:  Lodged Petition Claims 11(B), 11(D) and 16-27

8   are denied as time barred; Lodged Petition Claims 10(A), 10(B), 12, and 13 are denied as

9   procedurally barred; and Lodged Petition Claims 1-3, 6, 8, 14 and 15 are meritless, therefore

10  it would be futile to reamend these claims into the Amended Petition. The Court further

11  concludes that Claims 5(A) and 5(B) are denied on the merits.  Petitioner's renewed motion

12  to amend is granted as to Lodged Petition Claims 9(F)-9(I), 10(C), 11(A) and 11(C); these

13  claims will be briefed on the merits and addressed in a future order.

14      Accordingly,

15      **IT IS HEREBY ORDERED** that Petitioner's renewed motion for leave to file

16  Amended Petition (dkt. 120) is **GRANTED IN PART**, with respect to Lodged Petition

17  Claims 9(F)-9(I), 10(C), 11(A) and 11(C), and **DENIED IN PART**, as to Lodged Petition

18  Claims 1-3, 6, 8, 10(A), 10(B), 11(B), 11(D), and 12-27.

19      **IT IS FURTHER ORDERED** that Claims 5(A) and 5(B) are denied on the merits and

20  dismissed with prejudice.

21      **IT IS FURTHER ORDERED** that the Clerk of the Court shall file Petitioner's Lodged

22  Petition, which was lodged on August 26, 2004, and rename it "Second Amended Petition."

23      **IT IS FURTHER ORDERED** that, no later than forty-five (45) days following the

24  filing the filing of the Second Amended Petition, Petitioner shall file a memorandum

25  regarding the merits of Claims 9(F)-9(I), 10(C), 11(A) and 11(C) ("Supplemental Merits

26  Brief").   The Merits Brief shall specifically identify and apply appropriate AEDPA

27  standards of review as to *each claim for relief*, not simply restate facts and argument

28  contained in the Lodged Amended Petition.   Petitioner shall also identify in the

1  Supplemental Merits Brief: (1) each claim for which further evidentiary development is
2  sought; (2) the facts or evidence sought to be discovered, expanded or presented at an
3  evidentiary hearing; (3) why such evidence was not developed in state court; and (4) why
4  the failure to develop the claim in state court was not the result of lack of diligence, in
5  accordance with the Supreme Court's decision in <u>Williams v. Taylor</u>, 529 U.S. 420 (2000).

6       **IT IS FURTHER ORDERED** that, no later than forty-five (45) days following the
7  filing of the Merits Brief, Respondents shall file a Response ("Supplemental Merits
8  Response").

9       **IT IS FURTHER ORDERED** that no later than thirty (30) days following the filing
10 of Respondents' Supplemental Merits Response, Petitioner may file a Supplemental Reply.

11      **IT IS FURTHER ORDERED** that if, pursuant to LRCiv 7.2(g), Petitioner or
12 Respondents file a Motion for Reconsideration of this Order, such motion shall be filed
13 within fifteen (15) days of the filing of this Order. The filing and disposition of such motion
14 shall not toll the time for the filing of the Supplemental Merits Brief, Supplemental
15 Response or Supplemental Reply as scheduled in this Order.

16      **IT IS FURTHER ORDERED** that Petitioner's motion for reconsideration is **DENIED**.
17 (Dkt. 131.)

18      **IT IS FURTHER ORDERED** that the Clerk of Court forward a courtesy copy of this
19 Order to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, Arizona
20 85007-3329.

21      DATED this 11th day of January, 2006.

22

23                                   _____

24                                       Earl H. Carroll
                                   United States District Judge

25

26

27

28